JUDE G. GRAVOIS, Judge.
 

 |2The defendant, Calvin Tate, has filed an appeal relative to his conviction and sentence for possession of marijuana. For the reasons that follow, we convert this appeal to a -writ application and deny relief, thereby upholding the defendant’s conviction and sentence.
 

 JURISDICTION
 

 The appellate jurisdiction of this Court extends only to cases that are triable by a jury. LSA-Const. of 1974, art. V, § 10; LSA-C.Cr.P. art. 912.1 B;
 
 State v. Fleming,
 
 01-1370, p. 3 (La.App. 5 Cir. 5/29/02), 820 So.2d 1112, 1113. A misdemeanor is not triable by a jury unless the possible punishment exceeds six months imprisonment. LSA-C.Cr.P. art. 779. Possession of marijuana is punishable by imprisonment of not more than six months in the parish jail. LSA-R.S. 40:966 E(l). Since possession of marijuana is not triable by a jury, a | ^conviction for possession of marijuana is not appealable. The proper procedural vehicle for defendant to seek review of a misdemeanor conviction is by application for a writ of review. LSA-C.Cr.P. art. 912.1 C(l).
 

 It is the policy of this Court that an improperly filed appeal be converted to a writ application if the panel considering the case determines that the interest of justice demands it. Because the record has been lodged and all documents necessary for review of this matter are before
 
 *296
 
 this Court, in the interest of judicial economy and justice, we hereby exercise our supervisory jurisdiction and convert this appeal to a writ application.
 

 FACTS
 

 Deputy Scott Sigur of the Jefferson Parish Sheriffs Office testified that on May 17, 2008, he was patrolling the area around Lakeside Shopping Center dressed in full uniform and driving a marked patrol car. He was flagged down by an individual who informed him there was someone smoking marijuana in the mall’s parking garage. Deputy Sigur then rolled down both of his car’s windows and proceeded to drive through the parking garage. As he drove near a red vehicle, he detected the odor of marijuana. The smell grew stronger as he got closer to the automobile.
 

 Deputy Sigur testified that he saw three black men exit the vehicle and close the doors. The men drew his suspicion because of the marijuana odor coming from the car and the manner in which the men walked quickly into the mall. The officer wrote down a physical description of the subjects.
 

 After parking his vehicle, Deputy Sigur approached the red car and looked inside through a window. He saw a clear, plastic 20-ounce drink bottle in a cup holder in the back seat. He could see a green, leafy material inside of the bottle |4that he believed was consistent with marijuana. At that point, Deputy Sigur entered the mall and located the three subjects, one of whom was the defendant. Deputy Sigur identified defendant in court as one of the three subjects. Deputy Sigur radioed for assistance and Deputy Nick Songy responded. When Deputy Songy arrived, Deputy Sigur approached the subjects and told them he was conducting an investigation. He conducted pat-down searches of the subjects’ outer clothing for officer safety, handcuffed the men, and escorted them to their vehicle.
 

 When they arrived at the subjects’ vehicle, Deputy Sigur presented the men with advice of rights forms, which each of the men signed. Mr. Coleman, the subject who identified himself as the car’s owner, gave the officers written consent to search the vehicle. Deputy Sigur testified that Mr. Coleman told him there was a bag of marijuana in the storage compartment of the back, passenger side door.
 

 The officers searched the car and recovered the plastic bottle that Deputy Sigur had seen through the window, the bag of marijuana in the storage compartment, and a partially burnt cigar (a “blunt”) in the front center console which contained green vegetable matter.
 
 [1]
 
 Deputy Sigur noted that the material in the bottle contained stems that were consistent with marijuana and appeared to be a mixture of marijuana and tobacco. Deputy Sigur identified State’s Exhibit 1 as the bag found in the side storage compartment; State’s Exhibit 2 as the 20-ounce plastic bottle found in the cup holder; and State’s Exhibit 3 as the cigar containing green vegetable matter. A crime scene technician tested the evidence at the scene and found that the evidence tested positive for marijuana.
 

 Deputy Sigur testified that after the subjects signed the advice of rights forms, he interviewed them individually. All of them told the officer they had Spooled their money together to purchase the marijuana, so they shared ownership. Deputy Sigur issued the subjects misdemeanor summonses for possession of marijuana.
 
 *297
 
 He opted not to charge the men with possession of drug paraphernalia he found in the car, since they had cooperated in the investigation.
 

 Christine Kogos, an employee of the Jefferson Parish Sheriffs Office Crime Lab, was accepted by the trial court as an expert in the field of drug identification. She testified that the green vegetable matter found in the bag retrieved in State’s Exhibit 1 tested positive for marijuana. Ms. Kogos also examined the material from the clear bottle in State’s Exhibit 2 under a microscope, and was able to visually identify it as smoking tobacco. She saw no evidence of a controlled dangerous substance in that exhibit. Ms. Kogos testified that the torn cigar, State’s Exhibit 3, tested positive for marijuana.
 

 Defendant, Calvin Tate, testified at trial. He stated that he is a 21-year-old engineering student at Southern University. On May 17, 2008, he went to the mall with his friends Derrell Jones and Lemeal Coleman. Coleman drove the men to the mall in his mother’s car. They parked the car in the mail’s parking garage and walked inside to shop. Defendant admitted that he and his friends had marijuana with them that day, but denied that they smoked any in the car before they entered the mall.
 

 Defendant testified that he and his companions walked from the car to the mall entrance at a “regular” pace. He saw Deputy Sigur who looked him directly in the eye and kept going. The three men shopped at a store in the mall, and then returned to the car to retrieve Coleman’s credit card. The men then reentered the mall, and Coleman continued to shop while defendant and Jones sat on a bench.
 

 Defendant explained that they had been in the mall for 30 to 45 minutes when they were approached by Deputy Sigur who told them they were being |f,detained. A second officer joined Sigur, and then seven or eight additional officers arrived. Coleman returned and all three men were handcuffed, escorted outside, and placed in the back of a police ear.
 

 Defendant testified that at some point, Deputy Sigur asked Coleman to get out of the police car. Coleman and Sigur spoke briefly, and then the officer took Coleman’s keys out of his pocket. The officers searched the car, and a mall security officer recovered the evidence. Once the evidence had been seized, defendant saw Coleman sign something.
 

 Deputy Sigur took defendant and Jones out of the police car and questioned them individually. He asked defendant who the evidence belonged to, and defendant admitted that he and his friends had all contributed money to buy it. Defendant testified that he and his companions did not sign advice of rights forms until after the evidence had been recovered.
 

 The State called Deputy Songy as a rebuttal witness. Deputy Songy testified that he responded to Deputy Sigur’s call for police backup, that the three subjects were handcuffed for officer safety and for the safety of others in the crowded mall, and that the advice of rights forms and the consent to search form were completed •with the subjects individually before the vehicle was searched.
 

 Deputy Songy testified that at the time the men were handcuffed, they were advised that there was an investigation involving their vehicle. The men were told they were not under arrest yet, but they were under investigation.
 

 Deputy Songy testified that he recovered the clear bag containing green vegetable matter he believed to be marijuana from the back of the car. Mall security officers were present during the search,
 
 *298
 
 but their involvement was limited to directing traffic in the parking garage.
 

 17At the conclusion of the trial, the trial judge found the defendant guilty of possession of marijuana. The defendant received a six-month suspended sentence and was placed on probation for 24 months, with several special conditions. This appeal followed.
 

 SUFFICIENCY
 

 On appeal, defendant argues that the evidence was insufficient to support his conviction for possession of marijuana because the testimony of the State’s principal witness, Deputy Sigur, was simply not credible.
 
 [2]
 
 The State responds that it sufficiently proved the essential elements of the offense at trial. The State further notes that defendant only challenges the credibility of a witness, something that is exclusively within the province of the trier-of-fact.
 

 The constitutional standard for testing the sufficiency of the evidence, as enunciated in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier-of-fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. This standard does not allow the appellate court to substitute its own appreciation of the evidence for that of the fact-finder.
 
 State v. Pigford,
 
 05-0477, p. 6 (La.2/22/06), 922 So.2d 517, 521. It is not the function of the appellate court to assess the credibility of witnesses or to re-weigh the evidence.
 
 State v. Theriot,
 
 07-71, p. 14 (La.App. 5 Cir. 6/26/07), 963 So.2d 1012, 1021,
 
 writ denied,
 
 07-1598 (La.2/1/08), 976 So.2d 715. Rather, the reviewing court may intervene in the trier-of-fact’s decision only 18to the extent necessary to guarantee due process of law.
 
 State v. Mussall,
 
 523 So.2d 1305, 1310 (La.1988).
 

 In order to support a conviction of possession of marijuana, the State must prove that the defendant was in possession of marijuana, and that he knowingly possessed it. LSA-R.S. 40:966 C. Defendant does not argue that the State failed to prove these statutory elements. In fact, defendant admitted at trial to knowingly possessing marijuana. Additionally, Ms. Kogos, the State’s expert, testified that the material in the plastic bag and the cigar recovered from the car tested positive for marijuana.
 

 Defendant points out that Deputy Sigur testified he initially believed, based on his law enforcement experience, that the substance he saw in the plastic bottle in the car was marijuana. Deputy Sigur explained that on closer inspection, the material in the bottle appeared to be a mixture of cigar tobacco and marijuana stems. However, Ms. Kogos testified that she studied the material from the bottle under a microscope and found it contained only smoking tobacco. Thus, the focus of defendant’s argument is the discrepancies between the deputy’s testimony and Ms. Kogos’ findings. However, the question of whether Deputy Sigur rightly or wrongly believed the substance in the bottle to be marijuana is not relevant to a sufficiency challenge. Regardless of whether Deputy Sigur was mistaken about the identity of
 
 *299
 
 the substance in the clear bottle, the other evidence found in the car tested positive for marijuana.
 

 For these reasons, we find that the evidence presented at trial was sufficient for any rational trier-of-fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime in question have been proven beyond a reasonable doubt.
 

 ¡SUPPRESSION OF EVIDENCE AND STATEMENTS
 

 Defendant also argues that the trial court erred when it failed to suppress the illegally seized evidence and statements. He argues the police officers did not have reasonable suspicion to support the initial stop, nor did they have probable cause to make an arrest. Defendant further argues his statements were suppressible because it was the product of an illegal arrest. The State responds that Deputy Sigur had reasonable suspicion to make the initial stop, and that the officers did not exceed the limits of the stop. The State further asserts that defendant was properly apprised of his
 
 Miranda
 

 [3]
 

 rights before he made any inculpatory statements, and that the car was properly searched pursuant to valid written consent.
 

 The record does not contain written motions to suppress the evidence and statements, but defendant made an oral motion to suppress evidence at the beginning of trial. The judge referred the motion to the merits of the case. During the course of trial, defendant objected to admission of State’s Exhibits 1, 2, and 3 pending the trial court’s ruling on the motion to suppress. The record does not contain a written or an oral motion to suppress statements, nor was there any specific objection to any statements admitted during trial. The transcript indicates that trial judge only ruled on a motion to suppress evidence.
 

 Defendant’s failure to file a motion to suppress his statements and his failure to object to its admissibility at trial preclude his challenging the statements’ admissibility at trial. See LSA-C.Cr.P. art. 841;
 
 State ex rel. J.F.,
 
 03-0321, p. 5 (La.App. 3 Cir. 8/6/03), 851 So.2d 1282, 1286. Thus, defendant is not entitled to review of the admissibility of his statements on appeal; rather he is only entitled to review of the trial court’s ruling on his motion to suppress evidence.
 

 | inIn a hearing on a motion to suppress evidence seized without a warrant, the State bears the burden of proving that an exception to the warrant requirement applies. LSA-C.Cr.P. art. 703D. Under both
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and LSA-C.Cr.P. art. 215.1 A, a law enforcement officer may stop and question a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit a criminal offense.
 
 State v. Sam,
 
 08-220, p. 5 (La.App. 5 Cir. 6/19/08), 988 So.2d 765, 769,
 
 writ denied,
 
 08-1984 (La.5/15/09), 8 So.3d 577. Investigatory stops require reasonable suspicion of criminal activity.
 
 State v. Boss,
 
 04-457, p. 5 (La.App. 5 Cir. 10/26/04), 887 So.2d 581, 585. Reasonable suspicion is something less than probable cause to arrest and requires that police officers have sufficient knowledge of facts and circumstances to justify an infringement of the individual’s right to be free from government interference.
 
 State v. Chauvin,
 
 06-362, p. 7 (La.App. 5 Cir. 10/31/06), 945 So.2d 752, 757-58. Absent reasonable suspicion, an investigatory stop is illegal and the evidence seized as a result is suppressible.
 
 *300
 

 State v. Boss,
 
 04-457 at 5, 887 So.2d at 585.
 

 The determination of reasonable grounds for an investigatory stop does not rest on the officer’s subjective beliefs or attitudes, but is dependent on an objective evaluation of all the circumstances known to the officer at the time of his challenged action.
 
 State v. Kalie,
 
 96-2650 (La.9/19/97), 699 So.2d 879 (per curiam). In determining whether an officer acted reasonably in such circumstances, a reviewing court must take into account the totality of the circumstances, giving deference to the inferences and deductions of a trained police officer that might elude an untrained person.
 
 State v. Sam,
 
 08-220 at 6, 988 So.2d at 769.
 

 ^Defendant first complains that the report by a concerned citizen that he or she smelled marijuana in the mall parking garage was insufficient to supply Deputy Sigur with reasonable suspicion to make a stop. Defendant correctly notes that the “tipster” did not offer specific information, such as a description of a vehicle or the marijuana smoker’s location in the garage. Defendant is also correct in his assertion that the citizen report did not, by itself, supply the officer with reasonable suspicion to make an investigatory stop. However, a review of the record indicates that the officer did not rely on the reporter’s information that someone was smoking marijuana in the parking lot for reasonable suspicion to make the investigatory stop. Rather, Deputy Sigur testified that he patrolled the mall as part of his regular job assignment. When the anonymous “tipster” notified the deputy about the smell of marijuana in the parking garage, the officer drove his vehicle around the garage, as he presumably would have done as part of his patrol, even without the information from the tipster. As he patrolled the garage, Deputy Sigur detected the odor of marijuana. As he drew closer to the red car, the odor grew stronger.
 

 Deputy Sigur testified that he has worked in law enforcement for 12 years and had made several hundred arrests involving marijuana. As part of his training in the police academy, he learned to identify the odor of marijuana. The smell of the marijuana was sufficient to provide Deputy Sigur with reasonable suspicion that criminal activity was afoot.
 
 [4]
 
 The officer saw defendant and his companions exiting the vehicle from which the smell emanated.
 
 [5]
 
 Upon looking into the car, 112Peputy Sigur saw what he believed to be marijuana based on his experience. Based on the totality of the circumstances as presented by the testimony, at that point, Deputy Sigur not only had reasonable suspicion to stop defendant, Jones, and Coleman; he arguably also had probable cause for an arrest.
 

 The officer legally spotted the plastic bottle and its contents pursuant to the “plain view” exception to the warrant requirement. Police may seize evidence under the “plain view” doctrine when: 1) there is prior justification for an intrusion
 
 *301
 
 into the protected area; and 2) it is immediately apparent, without close inspection, that the items seized are evidence or contraband.
 
 Horton v. California,
 
 496 U.S. 128, 185-36, 110 S.Ct. 2801, 2307, 110 L.Ed.2d 112 (1990). In this instance, immediately after receiving a report that someone was smoking marijuana in a car in the parking garage, the officer noted a strong smell of marijuana near a car in the garage. He looked inside of the car from which the strong smell of marijuana emanated and saw what he believed to be marijuana in plain view. Defendant correctly points out that it was eventually learned the substance in the bottle Deputy Sigur spotted inside of the car was tobacco. However, the “plain view” exception does not require a police officer to be certain that the object in plain view is contraband; it simply requires that the officer have probable cause to believe the item in question is either evidence and/or contraband.
 
 Texas v. Brown,
 
 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983);
 
 State v. Smith,
 
 07-815, p. 6 (La.App. 5 Cir. 3/11/08), 982 So.2d 821, 825,
 
 writ denied,
 
 08-0927 (La.11/14/08), 996 So.2d 1088. Thus we find that the officers had authority to seize the clear plastic bottle from the car.
 

 Deputy Sigur testified that he handcuffed the three subjects for safety reasons, explaining that the officers were concerned for their own safety, since the subjects outnumbered them. The officers were also concerned for the safety of the | issubjects. Deputy Songy testified that the three subjects were handcuffed for officer safety, and for the safety of others in the crowded mall. The courts have found that an officer’s handcuffing a suspect prior to an Article 215.1 pat-down for weapons is acceptable where the officer’s concern for safety is reasonable under the circumstances. See
 
 State v. Melancon,
 
 03-514, p. 9 (La.App. 5 Cir. 10/28/03), 860 So.2d 225, 231,
 
 writ denied,
 
 03-3503 (La.4/23/04), 870 So.2d 297. Thus, based on the testimony at trial that the investigatory stop took place in a crowded mall and the officers knew nothing about the suspects except that they had exited a car from which a strong odor of marijuana emanated, we find that the officers in this case had the authority to handcuff the men.
 

 Additionally, we find that the officers’ search of the subjects’ car was valid based on Coleman’s written consent. Consent to search is one of the recognized exceptions to the warrant requirement, where the consent is freely and voluntarily given by a person who possesses common authority over or other sufficient relationship to the premises or effects sought to be inspected.
 
 State v. Nicholas,
 
 06-903, p. 8 (La.App. 5 Cir. 4/24/07), 958 So.2d 682, 687 (citing
 
 United States v. Matlock,
 
 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974)). Consent may be given orally or in writing.
 
 State v. Gomez,
 
 06-417, p. 7 (La.App. 5 Cir. 11/28/06), 947 So.2d 81, 86. The State has the burden of proving the consent was given freely and voluntarily when it relies on consent to justify a war-rantless search.
 
 Nicholas,
 
 06-903 at 8, 958 So.2d at 688. Voluntariness is a question of fact to be determined by the trier-of-fact under the totality of the circumstances.
 
 Id.
 

 Although the defendant testified that he did not see Coleman sign anything until after the officers had searched the car, both officers testified at trial that Coleman signed the consent form before the car was searched. The trial court |,.(apparently gave more credence to the officers’ testimony. Thus, we find the search of the vehicle was valid under the consent exception to the warrant requirement.
 

 
 *302
 
 For the foregoing reasons, we find no error in the trial court’s denial of the defendant’s motion to suppress the evidence.
 

 EXCESSIVE SENTENCE
 

 The defendant complains that his sentence is unconstitutionally excessive, given that he is a young college student with no prior criminal record. The State responds that defendant’s sentence was within statutory limits, and the trial court did not abuse its sentencing discretion.
 

 The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness.
 
 State v. Smith,
 
 01-2574, p. 6 (La.1/14/03), 839 So.2d 1, 4, citing
 
 State v. Sepulvado,
 
 367 So.2d 762, 767 (La.1979). A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering.
 
 Id.,
 
 citing
 
 State v. Bonanno,
 
 384 So.2d 355, 357 (La.1980). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice.
 
 State v. Lobato,
 
 603 So.2d 739, 751 (La.1992).
 

 In reviewing the issue of excessive sentence on appeal, the only relevant question is “ ‘whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.’ ”
 
 State v. Soraparu,
 
 97-1027 (La.10/13/97), 703 So.2d 608 (per curiam) (Internal quotations in original, citations omitted). To find a sentence excessive, this Court must determine that the penalty is so grossly disproportionate to the severity of the crime 115as to shock our sense of justice or that the sentence makes no reasonable contribution to acceptable penal goals and therefore, is nothing more than the needless imposition of pain and suffering.
 
 State v. Guzman,
 
 99-1528, p. 15 (La.5/16/00), 769 So.2d 1158, 1167 (Citation omitted).
 

 At the time of the instant offense, the penalty range for possession of marijuana was zero to six months in parish jail. LSA-R.S. 40:966 E(l). The defendant’s six month sentence was suspended and he was placed on active probation for 24 months. Also, a fine of $350 was imposed.
 

 The sentencing transcript shows that the trial judge was inclined to sentence defendant to six months in jail or in-home incarceration. Defense counsel stated that neither of those options was practical, since defendant was a full-time student in Baton Rouge. Defense counsel suggested that “an active probation for the maximum time” would be preferable. The judge acceded to defendant’s request, and placed him on probation for the maximum time allowed for a misdemeanor under LSA-C.Cr.P. art. 894 A(l).
 

 Thus, the record reflects that the trial judge imposed the sentence requested by defendant. Moreover, the defendant has failed to show that the trial court abused its broad sentencing discretion in imposing the maximum term of probation allowed by law. Accordingly, we find no merit to defendant’s argument that his sentence is excessive.
 

 CONCLUSION
 

 For the foregoing reasons, we deny defendant’s writ application and uphold his sentence and conviction.
 

 APPEAL CONVERTED TO WRIT APPLICATION; WRIT DENIED.
 

 [1]
 

 . When shown the "blunt” during cross-examination, Deputy Sigur stated that it did not appear to him to be burnt.
 

 [2]
 

 . When issues are raised on appeal as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. When the entirety of the evidence, including evidence that was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any issues regarding trial errors become moot.
 
 State v. Hearold,
 
 603 So.2d 731, 734 (La.1992);
 
 State v. Taylor,
 
 04-346, p. 4 (La.App. 5 Cir. 10/26/04), 887 So.2d 589, 592.
 

 [3]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694(1966).
 

 [4]
 

 . See
 
 State v. Craft,
 
 03-1852, pp. 8-9 (La.App. 4 Cir. 3/10/04), 870 So.2d 359, 365,
 
 writ denied,
 
 04-0923 (La. 10/1/04), 883 So.2d 1005, in which the court found police officers had reasonable suspicion to believe that the defendant and another person in a parked vehicle were in possession of marijuana and, thus, were justified in conducting an investigatory stop, where the officers were experienced in narcotics and were familiar with the smell of marijuana, the officers both smelled marijuana emanating from vehicle, and a cloud of smoke was coming from vehicle.
 

 [5]
 

 . Deputy Songy testified that even when he arrived at the scene sometime later, the smell of marijuana was still very strong.