ROBERTA. CHAISSON, Judge.
12This is .Lionel Burton’s second appeal. The sole issue raised herein is whether the trial court erred in denying defendant’s motion to suppress evidence. For the reasons which follow, we affirm the ruling of the trial court.

PROCEDURAL HISTORY

On May 6, 2010, defendant pled guilty to possession of a firearm by a convicted felon, a violation of LSA-R.S. 14:95.1 (count one), and to possession with intent to distribute heroin, a violation of LSA-R.S. 40:966 A (count two).[1] The trial court thereafter sentenced defendant to imprisonment at hard labor for fifteen years on count one and to imprisonment at hard labor for twenty years on count two, to run concurrently. Both sentences were ordered to be served without benefit of parole, probation, or suspension of sentence.[2]
|3Aso, on May 6, 2010, the State filed a bill of information pursuant to LSA-R.S. 15:529.1 alleging defendant to be a second felony offender. After defendant admitted to the allegations in the multiple bill, the *378 trial court vacated the sentence on count one and re-sentenced defendant as a second felony offender to imprisonment at hard labor for twenty years without benefit of parole, probation, or suspension of sentence to be served concurrently with the sentence imposed on count two. Defendant thereafter filed a motion for appeal which was granted by the trial court.
In his first appeal, defendant argued that he was denied his right to appeal the ruling on the motion to suppress because the transcript of those proceedings could not be obtained.[3] He also argued that since he was unable to appeal the ruling on the motion to suppress, he was entitled to withdraw his guilty pleas. This Court denied defendant’s request to withdraw his guilty pleas but remanded the matter to the trial court to conduct another suppression hearing. State v. Burton, 10-972 (La.App. 5 Cir. 6/14/11), 71 So.3d 379.
On September 23, 2011, another hearing was held on defendant’s motion to suppress in accordance with this Court’s instructions. After considering the evidence presented, the trial court denied defendant’s motion to suppress evidence and statement. It is from this denial that defendant now appeals.

FACTS

On February 24, 2009, at 2:47 a.m., Deputy Westley West of the Jefferson Parish Sheriffs Office was on duty when he heard a broadcast over the radio that there was an armed robbery in progress which involved a “white van type vehicle.” Approximately three to five minutes later, Deputy West saw a white Land Rover 14heading southbound on Clearview Parkway. Deputy West made a u-turn, got behind the vehicle, and activated his overhead lights and sirens.
The vehicle crossed over Airline Highway, and at that point, Deputy West thought the vehicle was going to stop. However, as Deputy West approached the rear of the vehicle, the vehicle took off again and headed southbound on Clear-view Parkway at a high rate of speed while changing lanes. The vehicle then took a right heading westbound on the Earhart Expressway and stopped in a dark area. Deputy West pulled his marked unit behind the suspect vehicle and advised the subject three times to exit the vehicle. After the third time, an individual, later identified as defendant, got out of the vehicle.
Deputy West told defendant to approach the rear of his vehicle and the front of the police unit. Defendant eventually complied with those instructions. Deputy West walked over and patted down defendant. As he did so, he found a large sum of money, with rubber bands around it, in both of defendant’s pockets. Deputy West handcuffed defendant and told him he was not under arrest, but rather was being detained. Deputy West then advised defendant of his Miranda[4] rights. Defendant told Deputy West that the money was from real estate activity; however, later on, defendant said he won the money gambling.
About that time, Deputy Roy Lambert arrived to assist with the stop. Deputy West informed Deputy Lambert that there *379 was a gun on the floorboard in defendant’s vehicle. Deputy Lambert walked over to the vehicle, saw the handgun, retrieved it, and gave it to Deputy West. At the suppression hearing, Deputy West explained that he had previously seen what appeared to be a gun on the floorboard of the vehicle at the time of the stop with his light. Deputy West testified that he |5saw the gun when he was in front of his police unit, and defendant was coming out of his vehicle.
Deputy Lee Hardy also arrived at the scene to assist with the stop. When he got there, defendant was already in the back seat of the police unit. While Deputy Hardy was standing there, he noticed behind the right front tire of Deputy West’s patrol car a large bag of what appeared to be crack cocaine. Deputy Hardy pointed the bag out to Deputy West, who then retrieved it. At the suppression hearing, Deputy West explained that two balls of narcotics were found where he had patted down defendant by the police unit on the side of the road. Deputy West further testified that at some point he saw something white fall, and as he walked by, Deputy Hardy pointed it out.
After considering this evidence presented at the suppression hearing, the trial court denied defendant’s motion to suppress evidence and motion to suppress statement.

DENIAL OF MOTION TO SUPPRESS

On appeal, defendant challenges the trial court’s denial of his motion to suppress evidence. Defendant specifically contends that Deputy West did not have reasonable suspicion of illegal activity; therefore, the initial stop of defendant and subsequent seizure of the evidence were not justified. To support this argument, defendant points out that the stop took place over thirty minutes after the armed robbery call was made; defendant’s clothing, a multi-colored shirt, did not match the description provided in the armed robbery call that the perpetrator wore a green shirt; the vehicle description provided in the armed robbery call of a white van with a television in it did not match defendant’s vehicle, a white Land Rover with no television; and the armed robbery call actually emanated from Yale Street and not York Street as testified to by the officers. Defendant also argues that the | ^search of the Land Rover and subsequent seizure of the gun was illegal under Arizona v. Gant[5] because he had already been removed from the vehicle, handcuffed, and placed against Deputy West’s police unit. We find no merit to these arguments.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. State v. Addison, 05-378 (La.App. 5 Cir. 12/27/05), 920 So.2d 884, 890, writ denied, 06-1087 (La.11/9/06), 941 So.2d 36. If evidence is derived from an unreasonable search or seizure, the proper remedy is to exclude the evidence from trial. State v. Boss, 04-457 (La.App. 5 Cir. 10/26/04), 887 So.2d 581, 585.
In a hearing on a motion to suppress, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. LSA-C.Cr.P. art. 703(D). The trial court’s denial of a motion to suppress is afforded great weight, and it will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Addison, 920 So.2d at 890.
*380 It is well established that a police officer may conduct a brief investigatory stop when the officer has a reasonable articulable suspicion of criminal activity. LSA-C.Cr.P. art. 215.1; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert, denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). Reasonable suspicion is something less than probable cause to arrest and requires that police officers have sufficient knowledge of the facts and circumstances to justify an infringement of an individual's right to be free of government interference. State v. Parker, 10-1038 (La.App. 5 Cir. 6/14/11), 71 So.3d 383, 388.
|7The facts upon which an officer bases an investigatory stop should be evaluated in light of the circumstances surrounding the incident. A reviewing court must take into consideration the totality of the circumstances and give deference to the inferences and deductions of a trained police officer that might elude an -untrained person. State v. Bums, 04-175 (La.App. 5 Cir. 6/29/04), 877 So.2d 1073, 1076.
In the instant case, Deputy West was aware that an armed robbery had just been committed in the general vicinity of where he was located. He then spotted a vehicle that matched the general description of the vehicle involved in the armed robbery and began following the vehicle.
Reasonable suspicion has been found to exist under similar circumstances. In State v. Turner, 500 So.2d 885 (La.App. 1 Cir.1986), an employee of a convenience store informed Officer Morris that a black man wearing a light colored hat and a light colored jacket or sweater grabbed her and took money from the store cash register. The incident occurred at approximately 2:50 a.m. Officer Morris was also advised that a witness had seen the suspect leave the store parking lot in a green Chevrolet Nova automobile. Information about the robbery and a description of the vehicle were broadcast over the police radio network. Officer Phares, on patrol in the vicinity, heard the broadcast and noticed a vehicle meeting the description. He forced the vehicle to stop at 3:05 a.m. The occupants were arrested after the officer determined that they were involved in the robbery.
In Turner, defendant moved to suppress evidence retrieved from the vehicle, which the trial court denied. On appeal, defendant argued that the trial court erred by failing to grant his motion to suppress, arguing that the police did not have reasonable suspicion to stop his automobile. The First Circuit found that the officer was clearly justified in making a stop for further investigation, noting that | Rthe officer was aware that a robbery had been committed, and that the automobile he was following matched the description of the vehicle used to flee the scene of that robbery just moments earlier. State v. Turner, 500 So.2d at 886-87.
In the instant case, as in Turner, Deputy West was aware that an armed robbery had just been committed in the general vicinity of where he was located, and that the white Land Rover he was following matched the description of the vehicle used in the robbery just minutes earlier. Although defendant claims in his brief that the stop took place thirty-one minutes after the armed robbery was reported to the police, the incident history detail log and Deputy West’s testimony reflect otherwise. The log, which was admitted into evidence at the suppression hearing, shows that at 2:46:21, an entry was made regarding the robbery that had just occurred at 5039 Yale Street. The log reflects that at 2:58:18, approximately twelve minutes la *381 ter, the white Land Rover was spotted, and at 3:15:24, it was pulled over.
Additionally, Deputy West testified that he heard over the radio that an armed robbery was in progress which involved a “white van type vehicle,” and that approximately three to five minutes later, he saw a white Land Rover heading southbound on Clearview Parkway. Further, when Deputy West attempted to pull defendant’s vehicle over, defendant fled at a high rate of speed away from the officer. See State v. Morgan, 09-2852 (La.3/15/11), 59 So.3d 408, 411, where the Louisiana Supreme Court concluded that defendant’s unprovoked flight, coupled with the late hour, dimly lit area, and the sergeant’s inferences and deductions based upon his experience with individuals who flee from the police, together supported a finding of reasonable suspicion.
In the present case, considering the totality of the circumstances, including that defendant’s vehicle matched the description of the vehicle used in the armed | nrobbery, the short amount of time between the armed robbery and the spotting of the vehicle, the location of the robbery being in the general vicinity of where the officer was located, defendant’s unprovoked flight from the officer, and the lateness of the hour, we find that the officer had reasonable suspicion to stop the vehicle for further investigation.
Having concluded that the initial stop was justified, we must now determine whether the officer was thereafter justified in seizing the weapon that was inside the vehicle. Police may seize evidence under the plain view doctrine when: 1) there is prior justification for an intrusion into the protected area; and 2) it is immediately apparent, without close inspection, that the items seized are evidence or contraband. State v. Tate, 09-619 (La.App. 5 Cir. 2/9/10), 33 So.3d 292, 300-01. Under the plain view doctrine, if police are lawfully in a position from which they view an object that has an incriminating nature that is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. State v. Leger, 05-0011 (La.7/10/06), 936 So.2d 108, 155, cert, denied, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007). The plain view exception does not require a police officer to be certain that the object in plain view is contraband; it simply requires that the officer have probable cause to believe the item in question is either evidence and/or contraband. State v. Tate, 33 So.3d at 301.
In State v. Parker, 71 So.3d at 389, this Court found, under similar circumstances, that the officers were justified in seizing the weapon pursuant to the plain view doctrine. In Parker, an officer stopped a vehicle he believed was involved with a burglary. As the officer was pulling the passenger out of the vehicle, he observed two handguns between the seats and the center console. This Court found that the officer had reasonable suspicion to stop the vehicle, and that 110the firearms were properly seized under the plain view doctrine. This Court noted that the officer was standing outside the vehicle, that he had a right to be standing there, that the firearms were obvious to him, and that it was immediately apparent the items were evidence or contraband.
Likewise, in the instant case, the deputy was standing outside of defendant’s vehicle, and he had a right to be standing there. Deputy West’s testimony indicates that the firearm was obvious to him and that it was immediately apparent the item was evidence or contraband. Given these *382 circumstances, we find that the firearm was properly seized under the plain view exception to the warrant requirement.[6]
After defendant was placed in the police unit, Deputy West and Deputy Hardy saw what appeared to be narcotics by the right front tire of Deputy West’s police unit, the same place where Deputy West had previously patted down defendant. Therefore, the last issue is whether those narcotics were lawfully seized.
If property is abandoned without any prior unlawful intrusion into a person’s right to be free from governmental interference, that property may be lawfully seized. In such cases there is no expectation of privacy and thus no violation of the person’s custodial rights. Only when the person is actually stopped without reasonable cause or when a stop without reasonable cause is imminent, is the right to be left alone violated, thereby rendering unlawful any resultant seizure of abandoned property. State v. Short, 95-742 (La.App. 5 Cir. 1/30/96), 668 So.2d 1240,1245.
In the instant case, Deputy West had reasonable suspicion to conduct an investigatory stop, and defendant apparently abandoned the narcotics by dropping _[i¡them to the ground during that stop. Therefore, the officer was likewise justified in seizing the narcotics.
Based on the foregoing discussion, we find that the initial stop of defendant and the subsequent seizure of the firearm and narcotics were justified. Accordingly, we conclude that the trial court did not err by denying defendant’s motion to suppress evidence.

AFFIRMED

. Defendant entered his guilty pleas pursuant to State v. Crosby, 338 So.2d 584 (La.1976), thereby reserving his right to appeal the trial court’s denial of his motion to suppress.

. In defendant’s first appeal, this Court amended his sentence on count two to delete the denial of parole eligibility. State v. Burton, 10-972 (La.App. 5 Cir. 6/14/11), 71 So.3d 379, 383.

. The first appeal record contained a memo from John Andressen, Chief of Court Reporters for Jefferson Parish, explaining that the 24th Judicial District Court had experienced a "loss of connectivity” with the audio server on January 15, 2010 (the date of the hearing). As a result, the audio files were unable to be retrieved, and a transcript from that date was not available.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)

. Arizona v. Gant, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009)

. Defendant argues that the seizure of the gun was illegal under Arizona v. Gant, supra. However, because the firearm was properly seized under the plain view exception to the warrant requirement, it is unnecessary to discuss Arizona v. Gant, supra, as it relates to the instant case.