CLARENCE E. McMANUS, Judge.
I STATEMENT OF THE CASE
On February 28, 2011, the St. John the Baptist Parish District Attorney filed a bill of information charging defendant, Laine E. Cortez, with creation or operation of a clandestine laboratory for the unlawful manufacture of a controlled dangerous substance in violation of LSA-R.S. 40:988 (count one), distribution/possession with intent to distribute methamphetamine in violation of LSA-R.S. 40:967(A)(1) (count two), and possession of methamphetamine in violation of LSA-R.S. 40:967(C)(2).
Defendant pled not guilty to these charges at her arraignment on March 2, 2011. On June 16, 2011, a hearing was conducted on defendant’s motion to suppress evidence and on August 3, 2011, the trial court denied the motion to suppress.
On August 23, 2011, defendant was advised of her Boykin rights and pled guilty to counts one and three. The waiver of rights form includes a factual explanation of this case: “That on or about January 1, 2011 defendant did allow a Meth lab to be run in her home and she did possess Meth[.]” Further, during the guilty plea colloquy, defendant provided the following: “I allowed methamphetamine to be made in my home for [sic], and I had it in my possession for my personal, personal [sic] use.”
|sAfter sentencing delays were waived, the trial court sentenced defendant to ten years imprisonment with the DOC as to count one and five years imprisonment with the DOC as to count three, to run concurrently with each other. Five years of the sentence was suspended, and defen *386 dant was placed on active probation for five years.
Although the transcript did not mention that the guilty pleas were entered pursuant to Crosby, the waiver of rights form filed in the record does indicate that the pleas were pursuant to Crosby. On August 25, 2011, defendant filed a motion to amend the minutes, contending that the plea was a Crosby plea as indicated in.the “Boykin,” but that counsel had failed to indicate the basis of the Crosby plea for the record. Defendant requested that the minute entry be corrected to show the basis for the appeal was the denial of the motion to suppress. According to the September 8, 2011 minute entry, after considering defendant’s motion to amend, the court noted that defendant’s guilty pleas on August 23, 2011, were pursuant to Crosby in regards to the motion to suppress.
On September 28, 2011, defendant filed a motion for Crosby appeal and designation of record. The trial court granted the appeal on October 3, 2011. This appeal follows.

DISCUSSION

First, we note that defendant failed to file her motion for appeal within the legally allotted time period. Defendant was sentenced on August 23, 2011. She filed a written motion for appeal on September 28, 2011. According to LSA-C.Cr.P. art. 914, a motion for an appeal must be made no later than 30 days after the rendition of the judgment or ruling from which the appeal is taken or 30 days from the ruling on a motion to reconsider sentence filed pursuant to LSA-C.Cr.P. art. 881.1, if one is filed. In this case, a motion to reconsider sentence was not | Tiled. As such, defendant had 30 days from August 23, 2011, the date of her sentencing, to file her appeal and failed to do so. However, between sentencing and filing the motion for appeal, defendant was attempting to correct the record to reflect that her plea was pursuant to Crosby and involved the denial of the motion to suppress. The trial court granted defendant’s motion for appeal, the State has not complained about any procedural irregularities in the ordering of the appeal, and the trial court appointed the Louisiana Appellate Project to represent defendant. Therefore, we will address the merits of the appeal by defendant.

ASSIGNMENT OF ERROR NUMBER ONE

In her only assignment of error, defendant argues that the search conducted by Sergeant Howell, after he was contacted by Sergeant Wale concerning the contents of the house and before he secured the search warrant, was unconstitutional. Defendant suggests that the trial court attempted to excuse the warrantless search on the basis that Sergeant Howell was faced with exigent circumstances that prevented him from securing a warrant, but argues that the facts failed to support this position. Defendant also argues that the court approved the search because the items were discovered in plain view but failed to account for the fact that the State failed to prove that Sergeant Howell had a right to be in the place where he observed the items. Defendant claims that because the State failed to prove either exigent circumstances justified the search or Sergeant Howell had a right to be in the residence at the time he made his observations in plain view, the evidence should be suppressed.
At the suppression hearing, Sergeant Edward Howell of the St. John the Baptist Parish Sheriffs Office was the only witness to testify. He testified that on January 1, 2011, he participated in an investigation that led to the arrest of defendant and *387 others. He explained the events leading to the arrests. He said that | Bon January 1, 2011, he was off duty but had his police radio on when he heard members of the Felony Intercept Unit and the Detective Bureau asking where Bobby Boudreaux was living at the time. They were looking for Darren Sterling regarding a shooting incident or an attempted murder charge and he was supposed to be “hiding out” with Boudreaux. Sergeant Howell called Sergeant Wale and advised him that Bou-dreaux had been under investigation by the Narcotics Bureau for several months in reference to methamphetamine production and believed that he was staying with defendant at her residence at 246 East Twelfth Extension Street in Reserve. He warned Sergeant Wale that if he made entry into the residence to be cautious because there could be a methamphetamine lab inside the residence with many hazardous chemicals. He was concerned about the safety of the officers and occupants. He advised Sergeant Wale to be on the lookout for precursors for manufacturing or for an active lab in the residence.
Sergeant Wale called Sergeant Howell about an hour later to inform him that he had observed numerous items throughout the residence in plain view and believed they were consistent with the manufacturing of methamphetamine. Defendant had given the officers permission to enter her house to detain Sterling.
Sergeant Howell went to the residence after hearing about the items observed. He believed that an active lab was in the residence and wanted to confirm that the lab was not in the process of cooking. He explained that there was no time to get a search warrant, which could have taken hours, because if they were in the process of cooking, there could have been an explosion. All subjects were detained inside of the residence. Sergeant Howell went through each room and took a “quick look” around. He observed several precursors in plain view. He observed camp fuel and lye in Boudreaux’s bedroom and in defendant’s bedroom. He found coffee filters throughout the residence. Sergeant Howell explained that 16he noticed there was a light odor from cooking methamphetamine present when he walked into the front door and there was a strong odor in the kitchen, which was coming from the garage. He believed that he had to make sure there was no active lab in the garage where methamphetamine was. being cooked. He explained that there was an open door in the kitchen that led to the attached garage, where it appeared the actual cooking was taking place. He found a reaction vessel in the garage. He observed a Gatorade bottle with camp fuel in it. He saw lithium battery strips, fertilizer, chicken feed, and an unknown liquid as well. He explained that one has to keep an eye on the cooking and “burp it” to vent or it could result in an explosion. He said that he did not have a search warrant to go into the garage, but did so for officer and occupant safety. He said that after seeing precursors, knowing the history, and smelling the odor, he went to make sure there was no active lab. He testified that there was the risk of explosion if there had been an active lab that was not tended to the entire time and explained the necessity of securing it. After realizing there was no imminent danger, Sergeant Howell left the residence to prepare a search warrant for defendant’s residence while members of the Felony Intercept Unit stayed at the residence. He also contacted the DEA HAZMAT cleanup crew, as was required, to go to the scene to dispose of any hazardous/toxic materials.
The probable cause affidavit for the search warrant provided the following:
*388 On January 1st 2011 at approximately 1830 hours, Detective Corporal Edward Howell was contacted by Sgt Wale of the St John the Baptist Sheriffs Office Felony Intercept Unit in reference to a possible meth lab being discovered in a residence.
Sgt Wale stated that the FIU along with a Detective from SJSO went to a residence in an attempt to make contact with a person whom was wanted for questioning in a shooting incident that had occurred recently. Sgt Wale stated that they were met at the door of the residence by the homeowner who then let them into the residence to apprehend the suspect. As the officers were looking for the subject in the residence, Sgt Wale |7noticed many items through out [sic] the house consistant [sic] with the manufacturing of Methamphetamine (Camp fuel, drain cleaner, gatorade bottles with unknown liquid, coffee filters, alcohol etc), as well as numerous items of parafernalia [sic]. Sgt Wale stated that he immediately secured the residence as well as all occupants and called Det. Howell of the St John Parish Sheriffs Office Bureau of Narcotics.
Det. Howell proceded [sic] to the residence to ensure the safety of the officers and the occupants as Sgt Wale was unsure if there was an actual working lab inside. When Det Howell arrived on-scene, he observed many of the above mentioned items throughout the bedrooms and in the garage. Also located in the garage was a plastic bottle containing chicken feed, lithium strips and an unknown clear liquid. There was no movement in the bottle as it appeared that one of the ingredients had not yet been introduced. Det. Howell immediately contacted his Supervisors to inform them of the findings and the residence was secured.
Judge Snowdy issued the search warrant, and Sergeant Howell returned to the residence and he, along with others, searched the residence. The evidence was photographed.
When conducting the search, the officers brought some of the materials to the HAZ-MAT team and they disposed of the hazardous materials. They provided the officers with a manifest for the items taken for destruction. Several items, including methamphetamine, were seized from the residence pursuant to the search warrant. Further, Sergeant Howell testified that several precursors or materials used for the methamphetamine lab were located in almost every room. He explained that such items included camp fuel, lye, coffee filters, a glass bowl with a spoon containing a white residue, drain cleaner, tubing, and 164 grams of Ephedrine (a key ingredient in the manufacturing of methamphetamine). He found a reaction vessel in the garage, along with a garbage bag with blister packs from Sudafed and lithium battery wrappers. He concluded that it appeared that the manufacturing of methamphetamine was taking place at the residence. Sergeant Howell testified that he learned through his training and experience that three precursors were needed to arrest someone for cooking methamphetamine. He | «explained that only a certain amount of Sudafed/Ephedrine products can be purchased each month. He testified that logs of all those who purchase the products are kept and all of the defendants in this case, except for Sterling, were on the log.
Sergeant Howell interviewed defendant and she gave him a voluntary statement two days after the search warrant and her arrest. She said the items found were used in the manufacturing of methamphetamine. She said Boudreaux and others cooked the methamphetamine.
*389 Sergeant Howell agreed that there were items included in the probable cause affidavit that were not listed in the inventory of items seized. He explained that items turned over to HAZMAT for destruction, such as the reaction vessel containing fertilizer, lithium strips and camp fuel, were not in his possession and were not included in the return for the search warrant. He believed the items listed in the return were the items in the custody of the Sheriffs Office. However, he testified that his report listed all of the items found and noted that there was a manifest of items as well. He testified that the manifest included Sudafed, Sudafed blister packs, plastic tubing, a bottle of drain opener, three bottles of lye, a clear plastic Gatorade bottle with a clear liquid acid substance, three containers of salt, a bottle of peroxide, fertilizer, camp fuel, coffee filters, and a black container of an unknown liquid. He also testified that photographs were taken of the items. Sergeant Howell testified that he may have omitted items from the return not in their possession because he knew that the DEA would give them a manifest of items that were taken.
Sergeant Howell testified that he did not conduct a complete search of the residence without a warrant, but went to the residence looking for an active methamphetamine lab for officer and occupant safety. He believed that the exigent j^circumstances allowed it. He believed the items that the Felony Intercept Unit had observed were sufficient for a methamphetamine lab. He explained that he had to make sure there was no active lab cooking in the residence. He said he walked through the residence and saw things in plain view. He did not consider the first time he entered the residence a search.
Defendant argued that there were items included in the search warrant application that were not listed on the return for the search warrant, which violated the particularity requirement of the application. Defendant argued that if the items were not listed in the return they were not found, and listing the items in the application deceived the judge. Further, defendant argued that there were no exigent circumstances when the officer searched the garage prior to getting the search warrant. As such, defendant argued that the items located were the products of an illegal search. Defendant claimed that a search warrant should have been applied for before the initial search because the residence had been secured. The trial court found no problem with the probable cause affidavit, but admitted concern about the seized evidence that was not included in the return. The State explained that the officers were required to bring in the DEA HAZMAT crew in this situation, noting that meth labs are extremely dangerous. The State also explained that the items on the manifest were not taken into police custody but were destroyed. The State provided that only the items taken into police custody were included on the return.
The trial court denied the motion to suppress. In making the ruling, the court explained that it was initially concerned about the items removed from the scene and not listed in the return, but realized there was no problem after the transcript was re-read because it did not affect the search warrant. The court then addressed the consent to enter the residence given by the owner to Sergeant Wale |Tnto search for Sterling, explaining that Sergeant Wale saw items in plain view after entry. The court noted -that Sergeant Wale did not request or sign the affidavit for the search warrant, but Sergeant Howell did after observing the same items in plain view. Noting that nothing was found exactly on point in the matter, the court found that the officer had a right to enter and see *390 things in plain view, which gave the other officer the right to enter.
On appeal, defendant contends that the State failed to prove either exigent circumstances justified the search or that Sergeant Howell had a right to be in the residence at the time he made his observations in plain view. Defendant contends that if Sergeant Howell had a genuine fear for officer safety he would have suggested that his fellow officers leave the house. Noting that the house was secured at the time, defendant believes there were no justifiable reasons for failing to secure a warrant. She contends that even assuming that the initial entry by Sergeant Wale and his officers was justified by their need to apprehend Sterling, once Sterling was taken into custody and the other occupants had been arrested any exigency ended. Defendant argues that the court erred by finding that Sergeant Wale’s justification for entering the home transferred to Sergeant Howell because the law is clear that the warrantless entry into a home as a result of exigent circumstances is limited in scope to the exigencies that justified the warrantless intrusion. Defendant concludes that because Sergeant Howell obtained the information that he used to support his warrant application from his illegitimate warrantless intrusion into defendant’s home, the court erred by denying the motion to suppress.
The State responds that all evidence seized pursuant to the search warrant was admissible because the warrant itself was valid. The State maintains that the items seized from defendant’s home were admissible under the plain view |T1 exception to the search warrant requirement, in addition to being admissible because they were seized pursuant to a valid search warrant. The State contends that Sergeant Wale observed items believed to be used in the manufacture of methamphetamine and was lawfully in the place where the items were observed because he had been given permission to enter the home by defendant who owned the home. The State argues that the plain view exception to the search warrant requirement existed once Sergeant Wale identified the precursor materials based on his observations and knowledge. The State notes that nothing under the law prohibits an officer from relying on information previously provided to him by another law enforcement officer in establishing probable cause. The State contends that based on what Sergeant Wale knew, there was a probability that incriminating evidence was involved and the plain view exception to the search warrant requirement also justified the trial court’s denial of the motion to suppress. The State concludes that the evidence was properly seized pursuant to a valid search warrant and the plain view exception applied even in the absence of a valid search warrant.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. State v. Thomas, 08-390, p. 6 (La.App. 5 Cir. 1/27/09), 8 So.3d 80, 83, writ denied, 09-0626 (La.11/25/09), 22 So.3d 170. If evidence is derived from an unreasonable search or seizure, the proper remedy is to exclude the evidence from trial. Id. A defendant who is adversely affected may move to suppress evidence from the use at the trial on the merits on the ground that it was unconstitutionally obtained. LSA-C.Cr.P. art. 703(A).
As a general rule, searches and seizures must be conducted pursuant to a validly executed search warrant or arrest warrant. State v. Holmes, 08-719, p. 6 (La.App. 5 Cir. 3/10/09), 10 So.3d 274, 278, writ denied, 09-0816 (La.1/8/10), 24 So.3d 857. A search warrant may be is *391 sued only upon probable cause to establish to the satisfaction of a magistrate, by the affidavit of a credible person, particularly describing the person or place to be searched and the things to be seized. State v. Lee, 05-2098, p. 14 (La.1/16/08), 976 So.2d 109, 122, cert. denied, 555 U.S. 824, 129 S.Ct. 143, 172 L.Ed.2d 39 (2008); State v. Johnson, 08-265, pp. 4-5 (La.App. 5 Cir. 8/19/08), 994 So.2d 595, 598. Probable cause for the issuance of a search warrant exists when the facts and circumstances within the affiant’s knowledge and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place that is to be searched. Lee, 05-2098 at 14, 976 So.2d at 122 (quotations omitted). The facts establishing probable cause for the warrant must be contained within the four corners of the affidavit. State v. Green, 02-1022, p. 8 (La.12/4/02), 831 So.2d 962, 969.
In a hearing on a motion to suppress, the defendant shall have the burden of proving the ground of his motion, except that the State shall have the burden of proof in establishing the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant. When evidence is seized pursuant to a search warrant, the defendant bears the burden of proof at a hearing on his motion to suppress that evidence. See LSA-C.Cr.P. art. 703(D); Johnson, 08-265 at 5, 994 So.2d at 599. An affidavit supporting a search warrant is presumed to be valid, and the defendant has the burden of proving that the representations made in the affidavit are false. Id. The task for a reviewing court is simply to ensure that under the totality of the circumstances the magistrate had a “substantial basis” for concluding that probable cause existed. Lee, 05-2098 at 14, 976 So.2d at 122 (quotation omitted).
I isThe trial court is afforded great discretion when ruling on a motion to suppress, and its ruling will not be disturbed absent an abuse of its discretion. Lee, 05-2098 at 15, 976 So.2d at 122; State v. Rogers, 09-13, p. 9 (La.App. 5 Cir. 6/23/09), 19 So.3d 487, 493, unit denied, 09-1688 (La.4/9/10), 31 So.3d 382.
Even assuming the affidavit did not establish probable cause to support the issuance of a search warrant, suppression of the evidence seized pursuant to the warrant is not automatically required. Johnson, 08-265 at 7, 994 So.2d at 600 n. 8. Where a law enforcement officer relies in good faith on a magistrate’s probable cause determination and the technical sufficiency of the warrant, exclusion of the evidence is not proper. Johnson, supra.
In the present case, defendant’s argument on appeal is not that the search warrant was deficient, but that the search warrant was required prior to when Sergeant Howell entered the residence after speaking to Sergeant Wale. Further, defendant argues, as she did in the trial court, that certain items were omitted from the return for the search warrant. Defendant argues that Sergeant Howell lacked probable cause and that the circumstances did not create exigent circumstances to allow entry into the residence without a warrant. However, we find that this case did involve exigent circumstances and that there was probable cause for Sergeant Howell to enter the residence.
The Fourth Amendment has drawn a firm line at the entrance to the home, and a police officer must have both probable cause to arrest or search and exigent circumstances to justify a non-consensual warrantless intrusion into private premises. State v. Brisban, 00-3437, p. 5 *392 (La.2/26/02), 809 So.2d 923, 927. In Kirk v. Louisiana, 536 U.S. 635, 638, 122 S.Ct. 2458, 2459, 153 L.Ed.2d 599 (2002) (per curiam) (citing Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)), the United States Supreme Court reiterated the firmly | ^established rule that police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home.
Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof, but more than mere suspicion. State v. Warren, 05-2248 p. 10 (La.2/22/07), 949 So.2d 1215, 1224 (quotation omitted). Probable cause can also be demonstrated through the collective knowledge of all of the police officers involved in the investigation, even if some of the information is not communicated to the arresting or searching officers. State v. Roberson, 46,697 (La.App. 2 Cir. 12/14/11), 81 So.3d 911, 919-20 (citing State v. Landry, 98-0188 (La.1/20/99), 729 So.2d 1019 (per curiam)).
In determining whether sufficient exigent circumstances exist to justify the warrantless entry and search or seizure, the court must “consider the totality of the circumstances and the ‘inherent necessities of the situation at the time.’ ” Warren, supra (quotation omitted). The United States Supreme Court has described exigent circumstances as “a plausible claim of specially pressing or urgent law enforcement need.” Illinois v. McArthur, 531 U.S. 326, 331, 121 S.Ct. 946, 950, 148 L.Ed.2d 838 (2001). Exigent circumstances justify a warrantless entry, search, or seizure when “ ‘police officers, acting on probable cause and in good faith, reasonably believe from the totality of the circumstances that (a) evidence or contraband will imminently be destroyed or (b) the nature of the crime or character of the suspect(s) pose a risk of danger to the arresting officers or third persons.’ ” Warren, 05-2248 at 11-12, 949 So.2d at 1225 (quotation omitted). Exigent circumstances may arise from the need to prevent the offender’s escape, to minimize the possibility of a violent confrontation that could cause injury to the officers and the public, and to preserve evidence from destruction or concealment. Brisban, 00-3437 at 5, 809 So.2d at 927-28.
11fiThe existence of ammonia has been recognized as constituting exigent circumstances due to its explosive nature. See State v. Guidry, 03-625, p. 11 (La.App. 5 Cir. 1/27/04), 866 So.2d 944, 950. In State v. Shumaker, 40,275, p. 1 (La.App. 2 Cir. 10/28/05), 914 So.2d 1156, 1159, the defendant appealed his conviction of attempted creation or operation of a clandestine laboratory for the unlawful manufacture of a controlled dangerous substance. In Shu-maker, officers responded to a complaint about the smell of ammonia coming from a trailer. Upon the officers’ arrival to conduct a “knock and talk,” they noticed a strong chemical odor that indicated the manufacture of methamphetamine. A babysitter consented to a search of the premises. Id. The defense filed a pre-trial motion to suppress, arguing, among other things, that the babysitter did not have authority to consent to the warrantless search of the premises. The trial court denied the motion and found the babysitter had authority to consent to the search. Shumaker, 40,275 at 2, 914 So.2d at 1160. On appeal, one of the defendant’s arguments was that the district court erred because the babysitter did not have the proper authority to consent to the search. Shumaker, 40,275 at 12, 914 So.2d at 1165. The appellate court found that the search appeared to have been primarily limited to common areas and the babysitter would have had the authority or at least apparent *393 authority to give consent to search those areas. Shumaker, 40,275 at 16, 914 So.2d at 1167. The court further found the search of the trailer was justified under the exigent circumstances exception to the warrant rule. The court believed that “[ujnder these circumstances, clear public safety concerns associated with the illegal manufacture of methamphetamine existed for the officers’ entrance into the trailer without a warrant.” On these grounds, the court found that the warrantless search was lawful and the trial court did not err in denying the motion to suppress. Shumaker, 40,275 at 18, 914 So.2d at 1168.
11i;Based on the foregoing, we find Sergeant Wale had the right to enter the residence to locate Sterling, as was permitted by defendant who apparently owned the residence. While trying to locate Sterling inside of the residence, Sergeant Wale was able to see items consistent with the operation of a methamphetamine lab. Sergeant Wale then had probable cause to believe that a methamphetamine lab was inside of the residence. Also, the exigent circumstances of the matter became evident at that time. Although Sergeant Howell said that Boudreaux had been under investigation for manufacturing methamphetamine, there was now probable cause that this was being done in defendant’s residence. Sergeant Wale’s findings were shared with Sergeant Howell. Through collective knowledge, there was probable cause.
Sergeant Howell appeared to have knowledge regarding methamphetamine labs and their dangerous nature. He testified that he was concerned for officer safety and the safety of the occupants and needed to confirm that there was no active lab cooking methamphetamine at the time. He discussed the risk of leaving the lab unattended and the possibility of explosion. He had the right to enter the residence based on the exigent circumstances and the transferred probable cause. Once realizing that the lab was not in the process of cooking methamphetamine, Sergeant Howell obtained a search warrant.
Once lawfully inside of the residence, Sergeant Howell observed items in plain view. Police may seize evidence under the “plain view” doctrine when: 1) there is prior justification for an intrusion into the protected area; and 2) it is immediately apparent, without close inspection, that the items seized are evidence or contraband. State v. Tate, 09-619, p. 12 (La.App. 5 Cir. 2/9/10), 33 So.3d 292, 300-01 {citing Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)). “Under the plain view doctrine, if police are lawfully in a position |17from which they view an object that has an incriminating nature that is immediately apparent, and if the officers have a lawful right to access to the object, they may seize it without a warrant.” State v. Leger, 05-0011, p. 65 (La.7/10/06), 936 So.2d 108,155, cert, denied, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007). The “plain view” exception does not require a police officer to be certain that the object in plain view is contraband; it simply requires that the officer have probable cause to believe the item in question is either evidence and/or contraband. Tate, 09-619 at 12, 33 So.3d at 301.
Even though Sergeant Howell could have seized things found in plain view, his observations were brief, and once he realized that the methamphetamine lab was not actively cooking, he obtained a search warrant for the residence. He returned after the warrant was obtained to conduct a more thorough search of the residence. Thus, we find the trial court did not abuse its discretion in denying defendant’s motion to suppress.

*394
ERROR PATENT DISCUSSION

The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland) 556 So.2d 175 (La.App. 5 Cir.1990). The following matters are presented for review.
First, the waiver of rights form and the transcript reflect that defendant was properly advised of the prescriptive period for filing an application for post-conviction relief pursuant to LSA-C.Cr.P. art. 930.8. However, the minute entry reflects an incomplete advisal of the prescriptive period. The entry reflects that defendant had “2 YEARS TO FILE POST CONVICTION RELIEF AFTER JUDGMENT OF CONVICTION BECOMES FINAL.” This Court has held that the failure to advise a defendant that the prescriptive period runs from the time his conviction and sentence become final is incomplete. State v. Grant, 04-341, p. 5 118(La.App. 5 Cir. 10/26/04), 887 So.2d 596, 598 (emphasis as found in original). However, the transcript prevails when there is a discrepancy between the commitment and the transcript. State v. Lynch, 441 So.2d 732, 734 (La.1983). Based on the transcript, we find that defendant was properly advised of the prescriptive period for filing post-conviction relief pursuant to LSA-C.Cr.P. art. 930.8.
Next, the minute entry of August 23, 2011, which contains the sentencing of defendant, contains another discrepancy. It mistakenly reflects that defendant received a five-year sentence for count two, instead of count three. This should be corrected for purposes of accuracy, thus, we direct the district court to make the entries reflecting these changes and direct the clerk of court to transmit the original of the minute entry to the officer in charge of the institution to which the defendant has been sentenced. See LSA-C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, 06-0244 (La.9/15/06), 937 So.2d 846 (per curiam). We also order that a copy of the corrected minute entry be sent to the Department of Correction’s Legal Department.
Accordingly, we affirm the defendant’s convictions and sentence.

AFFIRMED