CLARENCE E. McMANUS, Judge.
 

 1 2Pefendant appeals his sentence and conviction for possession of a firearm by a convicted felon. For the reasons which follow, we affirm defendant’s conviction, vacate defendant’s sentence, and remand the matter for further proceedings.
 

 STATEMENT OF THE CASE
 

 On March 4, 2010, the Jefferson Parish District Attorney filed a bill of information, charging defendant, Mitchell Parker, with possession of a firearm by a convicted felon in violation of LSA-R.S. 14:95.1. Defendant pled not guilty to this charge on March 5, 2010, at his arraignment. On September 2, 2010, defendant’s motion to suppress evidence was denied. Thereafter, defendant withdrew his not guilty plea and pled guilty as charged pursuant to
 
 State v. Crosby.
 

 [1]
 

 Defendant was sentenced to ten years imprisonment with the Department of Corrections without benefit of parole, probation, or suspension of sentence. This sentence was ordered to run concurrently with the sentence imposed in case number 10-1326 and with any revocation defendant had in Orleans Parish. Defendant now appeals.
 

 I
 
 -ASSIGNMENT OF ERROR NUMBER ONE
 

 On appeal, defendant argues that the trial court erred in denying his motion to suppress because the arresting officer lacked probable cause to believe that the occupants of the vehicle had been, were, or were about to be engaged in criminal activity at the time he stopped the vehicle in which they were riding. Noting that Detective Tregre knew few details surrounding the burglary, defendant argues that the detective’s suspicion was not objectively reasonable and did not provide a sufficient basis to support the stop. Defendant contends that the plain view exception should not apply to permit the admission of the evidence because the detective was not in a place where he had a right to be at the time that he made the observation of the weapons.
 

 The State responds that the detective had reasonable suspicion that the occupants of the vehicle had been involved in the “robbery.” It adds that the detective had probable cause to stop the vehicle and remove and detain the occupants of the car after he received information that a Dodge Magnum with a Texas license plate was involved in a burglary that occurred in New Orleans three days earlier and then verified the matching license plate number.
 

 On September 2, 2010, a hearing was held on the motion to suppress evidence based on an improper stop. Detective David Tregre of the New Orleans Police Department was the sole witness to testify at the hearing. He testified that on Janu
 
 *387
 
 ary 27, 2010, at approximately 6:15 p.m., he was sitting at a red light, about to get on the Interstate when he observed a silver Dodge Magnum entering the on-ramp at St. Bernard and 1-610, heading westbound in Orleans Parish. Earlier, he had received a call regarding a silver Dodge Magnum with Texas plates that was involved in a burglary. Detective Tregre got behind the vehicle in his unmarked unit, which matched the description of the suspected vehicle, and called another ^detective to verify the plate number. The plate number matched those numbers from the suspected vehicle that was involved in the burglary. He then called for back-up. Detective Tregre followed the vehicle and crossed the parish line into Jefferson Parish, waiting for back-up. A marked unit arrived and assisted in making the stop. Detective Tregre requested that the dispatcher advise the Jefferson Parish Sheriffs Office for deputies to meet them at the location.
 

 Detective Tregre testified that he stopped the vehicle because it was suspected to be a vehicle involved in a burglary. A witness gave a description of the vehicle and said there were three occupants in the silver Magnum with Texas plates. A specific license plate number was also given. He said that he saw the vehicle that matched the description of the suspect vehicle and then verified the license plate number. Once he verified the plate, he decided to initiate the stop. He explained that the other New Orleans’ officer approached the driver’s side of the vehicle and removed the driver from the vehicle, while Detective Tregre approached the passenger’s side. There were three occupants in the vehicle. Defendant was one of the passengers, but Detective Tregre did not recall if he was in the front or backseat of the vehicle. Detective Tregre removed the passengers from the vehicle and they were handcuffed and detained until Jefferson Parish deputies arrived. Detective Tregre testified that as he was pulling the passenger out of the vehicle he observed two handguns between the seats and the center console. He explained that the guns were obvious to him. Detective Tregre testified that the guns were in “plain view.”
 

 Detective Tregre did not recall the date of the burglary and was not sure about where it occurred. The report reflected that the burglary was three days before the stop, and he assumed that was correct. He explained that he had the authority to follow the suspect vehicle from Orleans Parish into Jefferson Parish. | flHe activated his red light and siren “[p]robably right close to the Parish line.”
 

 In his motion to suppress, defendant argued there was insufficient probable cause for the stop, noting that the burglary had occurred three days before and the detective lacked details of the burglary. He argued a search warrant should have been obtained and that any evidence produced from the invalid stop should be suppressed. The State responded that there was probable cause for the stop because the vehicle matched the description of a vehicle involved in a burglary and the license plate number matched the vehicle. It argued that the evidence was found in plain view and a warrant was unnecessary. The trial judge determined this was “good police work” and that the detective acted properly. The motion to suppress was denied. Defendant objected to this ruling.
 

 The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial.
 
 State v. Burns,
 
 04-175, p. 4 (La.App. 5 Cir.
 
 *388
 
 6/29/04), 877 So.2d 1073, 1075. It is well settled that a search conducted without a warrant issued upon probable cause is per se unreasonable subject only to a few specifically established and well-delineated exceptions.
 
 State v. Stone,
 
 94-155, p. 4 (La.App. 5 Cir. 7/26/94), 641 So.2d 652, 655,
 
 writ denied,
 
 95-0631 (La.1/6/97), 685 So.2d 129 (citing
 
 State v. Owen,
 
 453 So.2d 1202 (La.1984)).
 

 In a hearing on a motion to suppress, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. LSA-C.Cr.P. art. 703(D). The trial court’s decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression.
 
 State v. Ayche,
 
 07-753, p. 6 (La.App. 5 Cir. 3/11/08) 978 So.2d 1143, 1148,
 
 twits denied,
 
 08-2291 (La.1/30/09), 999 So.2d 752 and 08-1115 (La.2/13/09), 999 So.2d 1140.
 

 In
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court recognized the investigatory stop as an exception to the warrant requirement.
 
 State v. Sam,
 
 08-220, p. 5 (La.App. 5 Cir. 6/19/08), 988 So.2d 765, 769,
 
 writ denied,
 
 08-1984 (La.5/15/09), 8 So.3d 577. Under LSA-C.Cr.P. art. 215.1(A), a law enforcement officer may stop and question a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit a criminal offense.
 
 Sam,
 
 08-220 at 5, 988 So.2d at 769 (emphasis added). These principles are also applicable to an investigatory stop of an automobile.
 
 State v. Kelly,
 
 576 So.2d 111, 116 (La.App. 2 Cir.1991),
 
 writ denied,
 
 580 So.2d 666 (La. 1991).
 

 Investigatory stops require reasonable suspicion of criminal activity.
 
 State v. Boss,
 
 04-457, p. 5 (La.App. 5 Cir. 10/26/04), 887 So.2d 581, 585. In determining whether the police possessed the requisite minimal level of objective justification for an investigatory stop based on reasonable suspicion of criminal activity, reviewing courts must look at the totality of the circumstances of each case, a process which allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.
 
 State v. Boyer,
 
 07-0476, pp. 17-18 (La.10/16/07), 967 So.2d 458, 469-70 (quotations omitted; citations to quoted material omitted). The determination of reasonable grounds for an investigatory stop does not rest on the officer’s subjective beliefs or attitudes, but is dependent on an objective evaluation of all the circumstances known to the officer at the time of his challenged action.
 
 Sam, supra.
 
 Reasonable suspicion is something less than probable cause to arrest and requires that police officers have |7sufficient knowledge of facts and circumstances to justify an infringement of the individual’s right to be free from government interference.
 
 Sam,
 
 08-220 at 5, 988 So.2d at 769. Absent reasonable suspicion, an investigatory stop is illegal and the evidence seized as a result is suppressible.
 
 Boss,
 
 04-457 at 5, 887 So.2d at 585.
 

 In the present case, Detective Tregre observed a vehicle that matched the description given by a witness of a vehicle that was believed to be involved with a burglary — a silver Dodge Magnum with a Texas license plate. He recalled that a specific license plate number was given, so he called to confirm the license plate number and discovered that the vehicle was a match.
 

 “If an officer knows that a crime has been committed and has information which gives a reasonable basis to suspect a
 
 *389
 
 given person of having committed the offense, he is justified in making an investigatory stop.”
 
 State v. Square,
 
 433 So.2d 104, 106 (La.1983). In
 
 Square,
 
 the Louisiana Supreme Court held that the officer “was clearly justified in making a stop for further investigation” when the officer was aware that an armed robbery had been committed and followed an automobile that matched the description of the vehicle used to flee the scene of that robbery and had a license plate number that was virtually identical.
 
 Id.
 
 at 106.
 

 In
 
 State v. Cooper,
 
 45,568, (La.App. 2 Cir. 12/8/10), 55 So.3d 873, the Second Circuit found that that the vehicle stop was valid since the officer possessed the requisite probable cause to initiate the stop of the vehicle because of an equipment violation. The court went on to add that the officer was also within his authority to stop the vehicle based upon reasonable suspicion that the individuals had just committed an armed robbery.
 

 In
 
 State v. Kang,
 
 01-1262 (La.App. 5 Cir. 2/23/04), 866 So.2d 408, 413,
 
 writ denied,
 
 04-0944 (La.11/24/04), 888 So.2d 226, this Court found that there was reasonable suspicion to support an investigatory stop of the vehicle. In that | Scase, the detective was on patrol and heard a radio dispatch that a black Lexus with three Asian males from the Westbank was being sought in connection with a shooting and stopped a black vehicle with Asian male occupants. This Court found that even though the vehicle was a Honda and not a Lexus, the officer’s training and experience justified a continuation of the investigatory stop.
 

 As such, we find that Detective Tregre possessed reasonable suspicion to justify the vehicle stop. Thereafter, Detective Tregre observed firearms in the vehicle between the console and seats. Because Detective Tregre was justified in conducting an investigatory stop of the vehicle, but had no search warrant for the vehicle, we must determine if the firearms were properly discovered pursuant to the “plain view” exception to the warrant requirement.
 

 Police may seize evidence under the “plain view” doctrine when: 1) there is prior justification for an intrusion into the protected area; and 2) it is immediately apparent, without close inspection, that the items seized are evidence or contraband.
 
 State v. Tate,
 
 09-619, p. 12 (La.App. 5 Cir. 2/9/10), 33 So.3d 292, 300-01 (citing
 
 Horton v. California,
 
 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)). “Under the plain view doctrine, if police are lawfully in a position from which they view an object that has an incriminating nature that is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant.”
 
 State v. Leger,
 
 05-0011 p. 65 (La.7/10/06), 936 So.2d 108, 155,
 
 cert. denied,
 
 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007). The “plain view” exception does not require a police officer to be certain that the object in plain view is contraband; it simply requires that the officer have probable cause to believe the item in question is either evidence and/or contraband.
 
 Tate,
 
 09-619 at 12, 33 So.3d at 301. In this instance, the officer was standing outside of the vehicle. As previously discussed, the officer had a right to be ^standing there. Based on the detective’s testimony, we find the firearms were obvious to him and it was immediately apparent the items were evidence or contraband. Therefore, we find the firearms were properly seized and the trial court correctly denied the motion to suppress.
 

 ERROR PATENT DISCUSSION
 

 The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 *390
 

 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990). The following matters are presented for review.
 

 Just prior to sentencing, defense counsel explained that defendant had a revocation pending in Orleans Parish and counsel asked the court to run the sentence in Jefferson Parish concurrent with the potential revocation sentence, recognizing that the last judge who sentences has the right to run the sentence concurrent or not. Counsel requested that if the judge in Orleans Parish did not run the sentences concurrent, for the Jefferson Parish court to entertain a motion to withdraw the plea and resentence defendant so that the judge in Jefferson Parish could be the last judge who sentenced him.
 

 The commitment provides that defendant’s sentence was ordered to run concurrently with the sentence imposed in case number 10-1326 and with any other sentences defendant may be serving, along with “Probation revocation in Orleans Parish.” However, the transcript only reflects that the sentence was imposed to run concurrently with the sentence imposed in case number 10-1326 and with “any revocation” defendant had in Orleans Parish. The commitment is more specific as to the type of revocation and includes that the sentence would run concurrently with any other sentence that defendant may be serving, which the transcript does not provide for.
 

 hoWhile there is no prohibition against a trial court ordering a sentence to run concurrent with a parole revocation, LSA-C.Cr.P. art. 901(C)(2) states that only the judge who revokes the probation can order the sentence on a probation revocation to run either concurrent or consecutively with the sentence on the later conviction.
 
 State v. Bruce,
 
 03-918 (La.App. 5 Cir. 12/30/03), 864 So.2d 854, 859.
 

 The instant case appears similar to the circumstances in
 
 State v. Hines,
 
 07-313, p. 3 (La.App. 5 Cir. 11/27/07), 970 So.2d 707, 708. In
 
 Hines,
 
 this Court conducted an error patent review and found that the trial judge imposed an illegal sentence when he ordered the defendant’s 12-year sentence to be served concurrently with any probation violation. The record did not reflect that a revocation sentence had been imposed at the time of sentencing on the charged offense. This Court recognized that only the judge who revokes the probation can order the sentence on a probation revocation to run either concurrently or consecutively with the sentence on the later conviction. Thus, this Court found that the trial court lacked authority to order defendant’s sentence to be served concurrently with any probation revocation.
 
 Id.
 

 This Court went on to explain that admittedly, the trial judge imposed the illegal sentence in conformity with a plea agreement, but that a defendant does not have a constitutional or statutory right to an illegal sentence.
 
 Hines,
 
 07-313 at 3, 970 So.2d at 709. This Court noted that in
 
 State v. Fairman,
 
 06-366 (La.App. 5 Cir. 10/31/06), 945 So.2d 783, 785, this Court said that
 

 Criminal plea agreements are analogous to contracts in that they are formed by the consent of the parties established through offer and acceptance. Louisiana courts generally use civil contract law as guidance in determining the validity of plea bargains.
 
 State v. Givens,
 
 99-3518 (La.1/17/01), 776 So.2d 443, 445;
 
 State v. Robinson,
 
 01-946 (La.App. 5 Cir. 1/29/02), 807 So.2d 1085, 1089
 
 writ denied,
 
 02-0638 (La.11/1/02), 828 So.2d 563. Under our civil code an obligation cannot exist without a lawful cause. In La. C.C. art. 1966. La. C.C. art. 1968 provides that “[t]he cause of an obli
 
 *391
 
 gation is unlawful when the enforcement of the obligation would produce a result prohibited by law or against public policy”
 

 Hines,
 
 07-313 at 3, 970 So.2d at 709. This Court found that as in
 
 Fairman,
 
 the plea bargain in the case afforded the defendant an illegally lenient sentence and that such an agreement is an absolute nullity which cannot be confirmed on appeal.
 
 Id.,
 
 07-313 at 4, 970 So.2d at 709. This Court concluded that the defendant’s sentence was illegal and was imposed pursuant to an illegal plea agreement. Accordingly, this Court vacated the sentence and remanded the matter to the trial court for further proceedings, reserving to the defendant the right to withdraw his guilty plea.
 

 In
 
 State v. Campbell,
 
 08-1226 (La. App. 5 Cir. 5/26/09), 15 So.3d 1076,
 
 writ denied,
 
 09-1385 (La.2/12/10), 27 So.3d 842, this Court explained that an illegally lenient sentence imposed pursuant to a plea bargain is only an absolute nullity if the plea bargain has an unlawful cause or a negotiated sentence prohibited by law. This Court decided the plea bargain in
 
 Campbell
 
 was not an absolute nullity even though the sentence was illegally lenient due to the failure to impose a mandatory fíne. This Court further recognized an error patent in the defendant’s enhanced sentence, finding the sentence illegal and indeterminate because it was ordered to run concurrent with “any parole violation or probation violations (defendant) may have, or revocations.”
 
 Id.,
 
 08-1226 at 9,15 So.3d at 1081. After recognizing that only the judge that revokes probation can order the sentence on the probation revocation to run concurrently or consecutively with the sentence of a later conviction, this Court used its authority to correct the illegal sentence at any time and vacated that portion of the sentence.
 
 Id.
 

 |12In the present case, the waiver of rights form reflects that it was agreed that defendant’s sentence would run concurrently with any probation revocation in New Orleans. As such, the running of the sentence concurrently with probation revocation was part of the plea agreement. Therefore, we will follow
 
 Hines,
 
 and vacate defendant’s sentence and remand the matter to the trial court for further proceedings, reserving to the defendant the right to withdraw his guilty plea.
 

 We also find that defendant’s sentence is indeterminate because the transcript does not specify what type of revocation the sentence was ordered to run concurrent with. Thus, we find the sentence is also indeterminate because the defendant’s probation status is unclear. The trial judge simply ran defendant’s sentence concurrently with any revocation defendant had in Orleans Parish.
 

 In
 
 State v. Bazley,
 
 09-358, (La.App. 5 Cir. 1/11/11), 60 So.3d 7, 25-26, this Court decided to remand the matter to the trial court to clarify the defendant’s parole and/or probation status. Further, this Court amended the sentence to vacate the portions of the defendant’s sentence stating that the sentence run concurrently with “any revocation” because the trial court lacked authority to order the defendant’s sentence to be served concurrently with any sentence the defendant received in a probation revocation proceeding.
 
 Id.
 

 As discussed above, we have vacated defendant’s sentence and remanded the matter to the trial court. Therefore, no further action is required on this error patent.
 

 Further, the commitment reflects that the State agreed not to multiple bill defendant. However, the transcript and the waiver of rights form do not reflect that this was part of the plea agreement.
 
 *392
 
 Since we have remanded this matter for correction, as discussed above, we direct the district court on remand to make the entries in the minutes reflecting these changes and direct the clerk of court to | ^transmit the original of the minute entry to the officer in charge of the institution to which the defendant has been sentenced.
 
 See
 
 LSA-C.Cr.P. art. 892(B)(2);
 
 State ex rel. Roland v. State,
 
 06-0244 (La.9/15/06), 937 So.2d 846 (per curiam).
 

 Next, the date of the offense reflected in the bill of information is incorrect. The bill of information reflects that the date of the offense was March 2, 2010. However, the arrest report indicates that defendant was arrested on January 27, 2010. Also, the evidence presented at the suppression hearing suggests that the offense occurred on January 27, 2010. The time for testing the sufficiency of an indictment or bill of information is before trial by way of a motion to quash or an application for a bill of particulars.
 
 State v. Williams,
 
 04-1309, p. 24 (La.App. 5 Cir. 4/26/05), 902 So.2d 485, 500,
 
 writs denied,
 
 05-1640 (La.2/3/06), 922 So.2d 1173 and 05-1640 (La.2/3/06), 924 So.2d 144 (citing
 
 State v. Gainey,
 
 376 So.2d 1240, 1243 (La. 1979)). A post-verdict attack on the sufficiency of an indictment should be rejected unless the indictment failed to give fair notice of the offense charged or failed to set forth any identifiable offense.
 
 Williams, supra.
 
 The record does not reflect that a motion to quash was filed in this matter. Therefore, any claim as to a defective indictment has been waived.
 
 Williams,
 
 04-1309 at 24, 902 So.2d at 500-01.
 

 Next, the commitment reflects that defendant was properly advised of the prescriptive period for seeking post-conviction relief. However, the transcript provides that defendant had “two years from the date the sentence becomes final to file post conviction relief applications.” The transcript prevails when there is a discrepancy between the commitment and the transcript.
 
 State v. Lynch,
 
 441 So.2d 732, 734 (La.1983). Further, the waiver of rights form also provides an insufficient advisal— that defendant had “two (2) years of the date that this sentence becomes final” to seek post-conviction relief. This Court has held that |uthe failure to advise a defendant that the prescriptive period runs from the time his
 
 conviction and sentence
 
 become final is incomplete.
 
 State v. Grant,
 
 04-341, p. 5 (La.App. 5 Cir. 10/26/04), 887 So.2d 596, 598. We have vacated defendant’s sentence and remanded the matter for further proceedings in accordance with the above discussion. Therefore, upon remand, we instruct the trial court to inform defendant of the prescriptive period for filing a post-conviction relief application after resentencing.
 

 Accordingly, we affirm defendant’s conviction of possession of a firearm by a convicted felon, vacate defendant’s sentence, and remand the matter to the trial court for further proceedings.
 

 CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED
 

 [1]
 

 .
 
 State v. Crosby,
 
 338 So.2d 584 (La.1976).