STATE OF LOUISIANA

VERSUS

JACOB V. ROBINSON

NO. 22-KA-310

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 20-2251, DIVISION "L"
HONORABLE DONALD A. ROWAN, JR., JUDGE PRESIDING


April 12, 2023


**STEPHEN J. WINDHORST**
**JUDGE**


Panel composed of Judges Jude G. Gravois,
Marc E. Johnson, and Stephen J. Windhorst


**<u>AFFIRMED</u>**
   **SJW**
   **JGG**
   **MEJ**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR DEFENDANT/APPELLANT,
JACOB V. ROBINSON
    Prentice L. White

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
    Honorable Paul D. Connick, Jr.
    Thomas J. Butler
    Anne M. Wallis
    Jennifer C. Voss
    Christina Fisher

**WINDHORST, J.**

Defendant, Jacob Robinson, appeals his convictions and sentences for two counts of armed robbery, in violation of La. R.S. 14:64, and one count of aggravated battery, in violation of La. R.S. 14:34. After careful consideration of the law and evidence, we affirm defendant's convictions and sentences.

**PROCEDURAL HISTORY**

On April 27, 2020, the Jefferson Parish District Attorney filed a bill of information charging defendant, Jacob V. Robinson, with attempted armed robbery (count one), armed robbery (count two), and aggravated second degree battery (count three). At his arraignment, defendant pled not guilty to all counts.

On February 11, 2022, the State amended the bill of information. The State amended the bill as to count one to change the charge of attempted armed robbery to the armed robbery of Melbin Joel Chicas Galeas ("Mr. Galeas"). As to count two, the State amended the bill of information to change the name of the victim from Amaga Belator to Darbin Joel Amaya Villatoro ("Mr. Amaya"); and as to count three, to change the charge from aggravated second degree battery to aggravated battery of Melbin Joel Chicas Galeas. Before trial commenced, the trial court held an arraignment on the amended bill, and defendant pled not guilty.

Trial commenced on February 15, 2022 before a twelve-person jury, and on the following day, the jury unanimously found defendant guilty as charged on all counts.[1] On March 10, 2022, defendant filed a *pro se* Motion for New Trial.[2] On March 17, 2022, the trial court denied the motion for new trial.

On March 22, 2022, the trial court sentenced defendant to 99 years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence on counts one and two, and to ten years imprisonment at hard labor on

---

[1] The trial court polled the jury and confirmed that the verdict was unanimous on all counts.

[2] In his *pro se* motion for new trial, defendant argued that he received ineffective assistance of counsel.

count three. The trial court further ordered that defendant serve the sentences on counts one and three consecutively. Defendant objected to the sentences.

**EVIDENCE and FACTS**

Based on the testimony and evidence presented at trial, the following facts were developed regarding the March 29, 2020 incident giving rise to the armed robbery and aggravated battery convictions at issue in this appeal.

On March 29, 2020, Mr. Galeas and his wife, Herica Villararuy Gonzales Caceres, were living in an apartment in Jefferson Parish, with their two children and some relatives, Darbin Joel Amaya Viallatoro ("Mr. Amaya") and Marbin.[3] That evening, they were all sitting down in the apartment when an unknown male, later adduced to be defendant, entered the apartment without knocking on the door. Defendant's face was covered and he held a gun in his hand. Mr. Amaya described defendant as tall and wearing black clothing with a "beanie" covering his face. Defendant first put his gun to Mr. Amaya's head, who was sitting near the door, and said, "give me your money." Mr. Amaya gave defendant eighty dollars in cash, defendant then asked for his phone, and Mr. Amaya gave it to him. Defendant pointed the gun at Mr. Amaya the entire time.

Defendant then demanded money from Mr. Galeas, who threw ten dollars on the floor. Mr. Galeas testified that defendant said to him, "You only have this f***ing $10" and took his phone. Defendant then started moving backwards and had the "gun pointing." Mr. Galeas testified that he was "very afraid" and believed defendant would kill him. When defendant had backed away about twelve feet, Mr. Galeas jumped up and tried to grab defendant. He grabbed defendant's hand, lifted defendant's arm, and the weapon discharged three times. A bullet hit Mr. Galeas on the head and scratched his skull, requiring two to three sutures and leaving a scar on

---

[3] The record does not contain Marbin's full name. He was not present at trial.

his head. After the weapon discharged, the two other men in the apartment grabbed defendant and forced him onto the floor. One of them grabbed a brick and hit defendant with it. After this confrontation, defendant was bleeding from the head.

Soon thereafter, the police arrived, handcuffed everyone present, and spoke with all of the individuals present. A Spanish-speaking officer eventually arrived at the scene to assist with translation and speaking with those fluent only in Spanish.

An ambulance took defendant to the hospital where he received twelve staples for his injury. Mr. Galeas testified that prior to defendant's removal from the crime scene, defendant said that he would come back for them. Mr. Galeas denied meeting or seeing defendant before the night of the incident.

Miguel Antonio Varela ("Mr. Antonio"), a neighbor, testified at trial regarding the events that he witnessed relative to the crimes at issue. On the day of the incident, Mr. Antonio was living in another apartment at 1012 Orange Blossom close to Mr. Galeas and Mr. Amaya. Mr. Antonio testified that after he returned home that evening, Mr. Galeas' "little boy" came to his apartment and told him that there was a "man going with a mask." He explained that he looked in his neighbors' window and saw Mr. Galeas with a "serious face." Because he did not see anyone else inside, he returned to his apartment. Mr. Antonio testified that he heard a shot, and Mr. Galeas and the "other guy" then called for his help. He described that upon entering their apartment, he saw an unknown, young man lying on the floor and trying to escape. Mr. Antonio told Mr. Galeas to call the police while he watched. Upon arrival, the police detained them for about forty minutes, and he spoke to a Spanish-speaking officer about what he saw.

Ms. Caceres was at the apartment when the incident occurred; however, she was upstairs when defendant entered the apartment. She heard a voice she did not recognize speak in English. She then heard a noise that sounded "like a bang" or "a hit on the wall." Ms. Caceres went to the living room and saw that "they [Mr. Amaya

and Marbin] were struggling with someone," and that Mr. Galeas had his hands up. During the incident, one of her sons was upstairs, and the other was outside on the porch. Ms. Caceres testified that while the stranger was still inside, she left the apartment.

Detective Randal Collins of the Jefferson Parish Sheriff's Office ("JPSO"), who was dispatched to the crime scene, also testified at trial. He testified that upon his arrival at the scene, he saw a young, Hispanic male exit an apartment that was located in the back of the building. After handcuffing this individual, the detective looked in the apartment and saw defendant lying on his back on the floor. He stated that two other Hispanic males were in the living room and another individual came down the stairs. He explained that for officer safety reasons, he handcuffed everyone present except defendant, and conducted a pat down of the individuals present, which revealed no weapons or illegal substances. Detective Collins indicated that one male was bleeding from his head and that photographs were taken of his injury. Detective Collins stated that there was an apparent language barrier, and he could not speak Spanish.

Because defendant was conscious at the time and spoke English, Detective Collins asked him about the incident. Defendant told him that he was "jumped" by the "other gentlemen" because of thirty dollars. Soon thereafter, a Spanish-speaking officer from the JPSO, Deputy Julio Alvarado, arrived and spoke with all of the Hispanic individuals present. The men were all separated and unable to talk to each other before Deputy Alvarado interviewed them. Deputy Alvarado relayed to Detective Collins that each of their verbal statements were consistent with each other, but inconsisent with defendant's version of events. As a result, defendant became a suspect, and Detective Collins questioned defendant about the

inconsistences. He advised defendant of his <u>Miranda</u>[4] rights, and defendant acknowledged he understood. Detective Collins recalled that defendant maintained that he "went over there and they jumped him."

Detective Collins testified that one photograph depicted the "little skull" mask worn by defendant, and another photo showed defendant lying on his back on the floor. He pointed out that another photograph showed a bullet hole in the ceiling.

Defendant testified at trial and told a different story regarding that evening. Defendant asserted that at the time of the incident, he had known the alleged victims for a few months from "going that way" and claimed that they would ask him to obtain drugs for them. He stated that he did not know their names; but that he called them "friend", and they called him "Ray." Defendant testified that on the day in question, he went to the alleged victims' apartment because they wanted drugs and the money that he owed them. Defendant recalled that after he knocked, Mr. Galeas came outside, and they argued about the drugs not being what they "were supposed to be." He recalled that Mr. Galeas and "the other guy" wanted their money back. When asked what happened to the drugs because there were none found at the crime scene, he claimed that they must have gotten rid of the drugs.

Defendant contended at trial that Mr. Galeas hit him in the head with a brick, that he went to the hospital by ambulance, and had 12 staples in his head due to the injury. Defendant asserted that this took place outside the apartment, and that they dragged him into the apartment to make it look like a robbery. He also claimed that Mr. Galeas pulled a gun and pointed it at him. To sum up his self-defense argument, counsel asked defendant, "So I just want to get this straight – after Melbin [Mr. Galeas] pulled a gun on you, tried to shoot you, and then beat you, he then dragged you in the house and then called 911 because you told him to call?" Defendant

---

[4] <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

responded, "Yes, ma'am." Defendant denied robbing the individuals in the apartment.

**LAW and ANALYSIS**

In his counseled brief, defendant claims that his sentence of 109 years is unconstitutionally excessive. In his *pro se* brief, defendant claims that his bill of information was defective, that he was denied his sixth amendment right to effective assistance of counsel, that his counsel was ineffective, and that the trial court abused its discretion in denying his motion for new trial.

*Excessive Sentence Claim*

Defendant claims that his sentence of 109 years is unconstitutionally excessive in that he was sentenced to the maximum 99 years as to counts one and two (armed robbery), and that it was ordered to be served consecutively with his ten-year sentence on count three (aggravated battery) for a total of 109 years imprisonment.

Defendant concedes that he has a criminal history and admits to selling illegal drugs, but asserts that he was employed before going to jail for these crimes. He argues that he "should not have been sentenced to serve such a large amount of time for getting into a physical struggle with two men where both he and one other person received head injuries." He also notes that he has four young children to support.

The State asserts that the trial court did not abuse its broad sentencing discretion. The State contends, as to the nature of the crimes, that defendant's actions were especially egregious because small children were inside the home at the time of the offense. The State also contends that defendant has prior criminal history with convictions for theft, simple battery, resisting arrest, and drug paraphernalia. The State further notes that it withdrew a multiple bill, which charged defendant as a second-felony offender.

The failure to file a motion to reconsider sentence limits defendant to a bare review of his sentence for unconstitutional excessiveness. State v. Wilson, 14-878 (La. App. 5 Cir. 5/28/15), 171 So.3d 356, 366, writ denied sub nom. State v. Wilson, 2015-1204 (La. 5/27/16), 192 So.3d 741. Because defendant did not file a motion to reconsider sentence, he is only entitled to have his sentences reviewed for unconstitutional excessiveness.

The Eighth Amendment to the United States Constitution and Article I, Section 20 of the Louisiana Constitution prohibits the imposition of excessive punishment. A sentence is considered excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or imposes needless and purposeless pain and suffering. State v. Hayman, 20-323 (La. App. 5 Cir. 4/28/21), 347 So.3d 1030, 1042; State v. Woods, 18-413 (La. App. 5 Cir. 12/19/18), 262 So.3d 455, 460. The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4 D. In reviewing a sentence for excessiveness, the reviewing court shall consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court's sense of justice, while recognizing the trial court's wide discretion. Hayman, 347 So.3d at 1042-43; State v. Calloway, 19-335 (La. App. 5 Cir. 12/20/19), 286 So.3d 1275, 1279, writ denied, 20-266 (La. 7/24/20), 299 So.3d 69.

It is well-settled that maximum sentences are generally reserved for cases involving the most serious violations of the offense charged and the worst type of offender. State v. Dixon, 18-79 (La. App. 5 Cir. 8/29/18), 254 So.3d 828, 837, writ not considered, 18-1909 (La. 2/18/19), 263 So.3d 1154, and writ denied, 18-1909 (La. 4/8/19), 267 So.3d 606. The trial judge, however, has wide discretion in determining a sentence, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed. Wilson, 171 So.3d at

366; State v. Berry, 08-151 (La. App. 5 Cir. 6/19/08), 989 So.2d 120, 131, writ denied, 08-1660 (La. 4/3/09), 6 So.3d 767. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case. State v. Holmes, 12-579 (La. App. 5 Cir. 5/16/13), 119 So.3d 181, 200.

The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. Wilson, 171 So.3d at 366-67. On review, an appellate court considers three factors: (1) the nature of the crime, (2) the nature and background of the offender, and (3) the sentence imposed for similar crimes by the same court and other courts. State v. Williams, 16-600 (La. App. 5 Cir. 6/29/17), 224 So.3d 1194, 1197, writ denied, 17-1332 (La. 4/27/18), 241 So.3d 306.

Defendant was unanimously convicted of two counts of armed robbery (counts one and two) and one count of aggravated battery (count three). Before considering the three pertinent factors, we recognize that defendant's sentence was within the statutory limits, but was the statutory maximum sentence for armed robbery under La. R.S.14:64 B.

Prior to sentencing, the trial judge noted that he considered all of the evidence presented at trial, noting that defendant testified to "something totally different than the witnesses." The judge explained that the jury heard both sides, made a credibility determination, and unanimously found defendant guilty as charged on all three counts. The judge then provided the following in pertinent part:

> I can't think of a worse experience than [to] have someone break into a condo or an apartment, and point a gun at them, and then rob them, and then to shoot them. That to me is probably the worst experience of all and I will always remember that when I came up in New Orleans I had a judge say, the closest anyone comes to dying is when someone is robbed with a dangerous weapon. And in this incidence, it almost held true. The bullet happened to graze the top of his head and not shoot him in the head. So, as the Sentencing Official in this particular case, I'm going to rely on Code of Criminal Procedure Article 894.1 of the Sentencing Guidelines....

The trial court imposed a 99-year sentence upon defendant on counts one and two, to run consecutively to a 10-year sentence on count three. The sentencing range for the crime of armed robbery is imprisonment at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence. La R.S. 14:64 B.

As to the first factor, the nature of the crime, the Louisiana Supreme Court has recognized that armed robbery "is a pernicious offense" which "creates a great risk of emotional and physical harm to the victim, to witnesses, and, at times, even to the offender." State v. Celestine, 12-241 (La. 7/2/12), 92 So.3d 335, 337 (*per curiam*); State v. Ross, 13-924 (La. App. 5 Cir. 5/28/14), 142 So.3d 327, 334. This court has also stated that armed robbery is a "serious offense against the person." State v. Bruce, 10-121 (La. App. 5 Cir. 11/9/10), 54 So.3d 87, 97, writ denied, 10-2756 (La. 4/29/11), 62 So.3d 109. The record in this case reflects that defendant held a gun to multiple unarmed victims with children present and shot one victim. In addition, at the March 22, 2022 sentencing hearing, the State read three victim impact statements into the record. In these statements, the victims all indicated that the incident seriously affected their lives, that it traumatized them and their families, and that they live in fear.

As to the second factor, the defendant's criminal history, defendant has prior convictions for distribution of a controlled dangerous substance within the area of a school, church, or playground, possession of marijuana, possession of drug paraphernalia, shoplifting, simple battery, theft of goods, and resisting arrest. Thus, the record is clear that defendant is prone to criminal activity.

Finally, as to the third factor, a review of the jurisprudence reveals that courts have upheld similar sentences for similarly situated defendants. In State v. Lagarde, 07-123 (La. App. 5 Cir. 5/29/07), 960 So.2d 1105, writ denied sub nom. State ex rel. Lagarde v. State, 07-1650 (La. 5/9/08), 980 So.2d 684, this court upheld a 99-year

sentence for a defendant convicted of armed robbery, noting that the defendant ordered the victim out of her vehicle at gunpoint and pushed the victim's son out of the vehicle, placing the lives of the victim and her son at risk of death or great bodily harm. The defendant in Lagarde had two prior convictions for simple burglary and unauthorized use of a vehicle. Id. at 1114-17.

In State v. Douglas, 389 So.2d 1263, 1264-67 (La. 1980), the defendant, who had a criminal history that included three prior felony convictions, robbed the victim at gunpoint after the victim responded to the defendant's knock at his door. The defendant pushed a pistol into the victim's stomach, entered the house, and ordered the victim to hand over his wallet. Id. at 1264-65. The victim was not injured. The Louisiana Supreme Court affirmed defendant's 99-year sentence, noting that an armed invasion of a victim's home at night presented an especially terrifying scene. Id. at 1267-68.

In light of the circumstances surrounding the armed robbery, defendant's criminal record, and other sentences imposed on similarly situated defendants, we do not find that defendants' sentences for armed robbery are unconstitutionally excessive.

We have also considered whether defendant's sentence for aggravated battery to ten years at hard labor is unconstitutionally excessive. Although defendant received the maximum term of imprisonment as his sentence for this conviction, he was not required to pay a fine. La. R.S. 14:34 B. He therefore did not receive the maximum penalty of ten years imprisonment at hard labor with a fine of five thousand dollars.[5]

The jurisprudence reveals that courts have upheld maximum ten-year sentences for aggravated battery convictions. In State v. Hawkins, 95-28 (La. App.

---

[5] See State v. Stewart, 15-721 (La. App. 5 Cir. 5/19/16), 193 So.3d 401, writ denied, 16-1166 (La. 5/12/17), 219 So.3d 1103, where this court found defendants were not sentenced to the maximum penalties under the statutes as the maximum permissible fine was not imposed.

4 Cir. 3/29/95), 653 So.2d 715, the appellate court affirmed the defendant's ten-year sentence where the defendant was convicted of aggravated battery for shooting at the victim with an assault rifle. The appellate court determined that the defendant demonstrated the requisite use of force with a dangerous weapon upon the person of another. Further, the court found that the defendant's complete lack of regard for the safety of the victim and others in the crime scene area evidenced that the defendant was the worst kind of offender and deserving of the maximum sentence.

In State v. Sullivan, 02-35 (La. App. 5 Cir. 4/30/02), 817 So.2d 335, 340-42, this court upheld the defendant's ten-year sentence for aggravated battery even though the defendant was mentally ill and had no prior convictions but three adult arrests. In this case, defendant attacked his neighbor without provocation causing a cut over his left eye that required hospital care.

Considering the foregoing, we do not find defendant's ten-year sentence for his conviction of aggravated battery unconstitutionally excessive. This assignment of error lacks merit.

### *Defendant's Bill of Information*

In his *pro se* brief, defendant argues that the amended bill of information should be annulled because the bill was "upgraded" regarding counts one and three without any additional evidence being submitted; the bill did not set out the elements of armed robbery or contain a value amount; and he did not receive a copy of the charges against him prior to trial.

The time for testing the sufficiency of an indictment or bill of information is before trial by way of a motion to quash or an application for a bill of particulars. State v. Parker, 10-1038 (La. App. 5 Cir. 6/14/11), 71 So.3d 383, 392. A court should reject a post-verdict attack on the sufficiency of an indictment unless the indictment failed to give fair notice of the offense charged or failed to set forth any identifiable offense. Id. Defendant did not file a motion to quash in this matter.

Therefore, we find defendant waived any claim based on the allegedly defective indictment.

Notwithstanding the procedural bar to the claim, the Louisiana Constitution of 1974 provides an accused shall be informed of the nature and cause of the accusation against him. La. Const. art. I, § 13. Pursuant to La. C.Cr.P. art. 464:

> The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.

The original bill of information, which was filed on April 27, 2020, charged defendant with attempted armed robbery of Checas Melbam (count one), armed robbery of Amaga Belator (count two), and aggravated second degree battery of Checas Melbam (count three). On February 11, 2022, the State amended the bill of information as to count one to charge defendant with armed robbery of Melbin Joel Chicas Galeas; as to count two to change the name of the victim to Darbin Joel Amaya Villatoro; and as to count three to change the second degree battery charge to aggravated battery of Melbin Joel Galeas. Before the commencement of trial, on February 15, 2022, defendant was arraigned on the amended bill and pled not guilty.

To the extent defendant claims he did not receive sufficient notice of the charges against him, the transcript reflects that a discussion amongst the parties and the trial court occurred regarding the amendments to the bill of information before the commencement of trial. Defense counsel waived a reading of the bill of information, stating, "I waive a reading because I've received it and we enter a plea of not guilty."

In addition, defense counsel did not file a bill of particulars, and the State provided open-file discovery. Open-file discovery relieves the State of the necessity of answering a motion for a bill of particulars. State v. Parker, 04-1017 (La. App. 5

Cir. 3/29/05), 901 So.2d 513, 519, <u>writ denied,</u> 05-1451 (La. 1/13/06), 920 So.2d 235. The discovery receipt filed into the record on August 6, 2020 reflects that defense counsel received, among other things, the arrest report, a probable cause affidavit, and the police report.

Accordingly, upon review of the record, we find that defendant was fully aware of the charges against him in the amended bill of information and did not show any prejudice by any alleged defect in the amended bill of information. This assignment of error lacks merit.

### *Right to Counsel of Choice*

In his *pro se* brief, defendant asserts that the trial court abused its discretion in allowing defense counsel to proceed to trial as his advocate because he fired his defense counsel before trial due to a disagreement. Defendant contends that because of the disagreement, his counsel sat "calmly and quietly throughout the proceedings without making any objections prior to or during trial." He argues counsel was acting under the influence of an actual conflict that adversely affected his performance at his trial, citing to <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

Before trial began, defendant informed the court he wanted to fire his counsel, asserting that counsel was not ready for trial. Defense counsel stated for the record that he moved to withdraw in light of his client's feelings about him. The trial court refused to allow defendant to fire his counsel and denied the motion to withdraw because it appeared to be a dilatory tactic. The trial court stated that he would not grant a continuance to delay the trial and noted defendant's objection. The trial court informed defendant that he had two good private lawyers, including his previous counsel, Bruce Netterville, and his current defense counsel, Michael Idoyoga.

Generally, a person accused in a criminal trial has the right to counsel of his choice. <u>State v. Reeves</u>, 06-2419 (La. 5/5/09), 11 So.3d 1031, 1057. A defendant's

right to choose his defense counsel is not absolute and cannot be manipulated to obstruct orderly procedure in courts and cannot be used to thwart the administration of justice. State v. Ventris, 10-889 (La. App. 5 Cir. 11/15/11), 79 So.3d 1108, 1119. A defendant must exercise his right to choose an attorney at a reasonable time, in a reasonable manner, and at an appropriate stage of the proceedings. State v. Burbank, 07-125 (La. App. 5 Cir. 10/30/07), 971 So.2d 1173, 1178, writ denied, 07-2287 (La. 4/25/08), 978 So.2d 364. The trial court's ruling on this issue will not be disturbed absent a clear showing of abuse of discretion. State v. Bridgewater, 00-1529 (La. 1/15/02), 823 So.2d 877, 896, cert. denied, 537 U.S. 1227, 123 S.Ct. 1266, 154 L.Ed.2d 1089 (2003).

Hiring new counsel on the day of trial obstructs the orderly proceedings of the court. Ventris, 79 So.3d at 1120. A defendant in a criminal trial cannot force a postponement by a last minute change of counsel. State v. Wilson, 09-108 (La. App. 5 Cir. 12/29/09), 30 So.3d 149, 154. Without a justifiable basis, there is no constitutional right to make a new choice of counsel on the very date the trial is to begin, with the accompanying necessity of a continuance and its disrupting implications. State v. Bridgewater, 00-1529 (La. 1/15/02), 823 So.2d 877, 896. This court has found no abuse of the trial court's discretion in denying a motion for continuance on the day of trial to replace attorneys where the defendant had counsel that was prepared for trial. Wilson, 30 So.3d at 154.

In this case, defendant attempted to fire his defense counsel on the morning of trial, February 15, 2022, because defendant did not believe counsel was ready for trial. Defense counsel was prepared for trial, and had been representing defendant since April 27, 2021 without issue. The trial court expressly informed defendant that he could not terminate his current lawyer to obtain a continuance and delay trial. The trial court noted that both defendant's first lawyer and current lawyer were both capable and qualified private lawyers. Given that defendant's late request for new

counsel was on the day of trial, and that counsel was qualified and, based on the record, was evidently prepared, we find no abuse of discretion in the trial court's denial of defendant's request for new counsel.

Every criminal defendant is entitled, not only to counsel, but also to conflict-free counsel. U.S. Const. Amend. 6 and 14; La. Const. Art. I, § 13; State v. Fontenelle, 17-103 (La. App. 5 Cir. 9/13/17), 227 So.3d 875, 885. An actual conflict of interest is established when the defendant proves that his attorney was placed in a situation inherently conducive to divided loyalties. State v. Kelly, 14-241 (La. App. 5 Cir. 10/29/14), 164 So.3d 866, 878, writ denied, 14-2499 (La. 9/25/15), 178 So.3d 163. The phrase "actual conflict of interest" means "precisely a conflict that affected counsel's performance—as opposed to a mere theoretical division of loyalties." Id. at 879.

Defendant asserts defense counsel had an actual conflict of interest and relies on Cuyler, *supra*, but we find that case distinguishable from the instant matter. In Cuyler, the United States Supreme Court held that the participation of two privately retained attorneys in the three separate trials of the petitioner and his codefendants established as a matter of law that the two attorneys represented all the defendants and that the consequent possibility of a conflict among the interests represented violated the petitioner's Sixth Amendment rights. The present case does not involve a conflict of interest arising from the representation of multiple defendants.

Defendant fails to present anything to show defense counsel had an actual conflict of interest that adversely affected the performance of defendant's defense counsel. Defendant's conclusory assertions in his brief do not prove that counsel was placed in a situation inherently conducive to divided loyalties or that an actual conflict of interest arose between defendant and his attorney. We find that defendant failed to prove any conflict of interest. This assignment of error lacks merit.

### *Right to Effective Assistance of Counsel*

The Sixth Amendment to the United States Constitution and Article 1, § 13 of the Louisiana Constitution require that a defendant have effective assistance of counsel. State v. McDonald, 04-550 (La. App. 5 Cir. 11/16/04), 889 So.2d 1039, 1042, 04-3088 (La. 4/1/05), 897 So.2d 599. A claim of ineffective assistance of counsel must satisfy the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). State v. Ott, 12-111 (La. App. 5 Cir. 10/16/12), 102 So.3d 944, 953; State v. Griffin, 14-450 (La. App. 5 Cir. 12/16/14), 167 So. 3d 31, 48, writ denied, 15-0148 (La. 11/20/15), 180 So.3d 315.

Under the Strickland test, the defendant must show: (1) that counsel's performance was deficient, that is, that the performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. This requires showing that counsel's errors were so serious as to deprive the defendant of a trial whose result is reliable. Id. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.

A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Ott, 102 So.3d at 953. Therefore, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." State v. Griffin, 14-450 (La. App. 5 Cir. 12/16/14), 167 So.3d 31, 48, writ denied, 15-148 (La. 11/20/15), 180 So.3d 315. An inquiry into the effectiveness of counsel must be specific to the facts of the case, and must take into consideration the counsel's perspective at the time. Id. The Sixth Amendment does not guarantee errorless counsel or counsel judged ineffective by hindsight. State v. LaCaze, 99-

0584 (La. 1/25/02), 824 So.2d 1063, 1078-79, cert. denied, 537 U.S. 865, 123 S.Ct. 263, 154 L.Ed.2d 110 (2002).

Defendant contends that his counsel was unconstitutionally defective for failing to follow up on pre-trial motions, failing to raise any objections during jury selection and trial, and failing to object to the trial court's rescheduling of trial. He asserts that he was prejudiced by his attorney's "ineffectiveness during the entire court proceedings." Defendant's contentions as to the denial of his motion for new trial are also based on allegations of ineffective assistance of counsel. Defendant complains that the trial court abused his discretion in denying his motion for new trial because the court saw and watched the deficient performance of his attorney prior to and during trial. Defendant notes that he had to file a *pro se* motion for new trial.

It is well-settled that when a defendant proceeds to trial without raising the issue that his pre-trial motions were outstanding, that defendant waives those pending motions. See State v. Sims, 09-509 (La. App. 5 Cir. 2/12/10), 33 So.3d 340, 343, writ denied, 10-596 (La. 10/8/10), 46 So.3d 1264. Thus, because defendant proceeded to trial without an objection to any outstanding pending pre-trial motions, defendant has waived his right to object on the basis of these motions. In addition, before the start of trial on February 15, 2022, the State informed the court that "motions were previously waived, but specifically I wanted to put on the record that defense counsel is waiving the motion to suppress the statement." Defense counsel informed the court that the statements at issue were not necessarily inculpatory, were confusing, and were taken after defendant had been hit on the head with a brick. Counsel did not believe that these statements were necessary to suppress.

In addition, in his brief, defendant fails to assert how the outcome of his trial would have been different if defense counsel had pursued the omnibus pre-trial motions at issue in this case. He fails to argue any specific reason why counsel's pursuit of a ruling on the suppression motion, or any of the motions, would have an

effect on the outcome of his case. Defendant merely makes conclusory and non-specific assertions as to counsel's alleged failure to move to have these motions heard. "General statements and conclusory allegations will not suffice to prove a claim of ineffective assistance of counsel." State v. Fisher, 19-488 (La. App. 5 Cir. 6/24/20), 299 So.3d 1238, 1247.

Further, for purposes of an ineffective assistance of counsel claim, the filing of pretrial motions is squarely within the ambit of the attorney's trial strategy. State v. Jones, 09-688 (La. App. 5 Cir. 2/9/10), 33 So.3d 306, 325. Counsel's decisions as to which motions to file, or in this case, to pursue form a part of trial strategy. See State v. Hoffman, 98-3118 (La. 4/11/00), 768 So.2d 542, 577, cert. denied, 531 U.S. 946, 121 S.Ct. 345, 148 L.Ed.2d 277 (2000). Hindsight is not the proper perspective for judging the competence of counsel's trial decisions and an attorney's level of representation may not be evaluated based on whether a particular strategy is successful. Jones, *supra*. The burden is on the defendant to overcome the presumption that, under the circumstances, counsel's conduct falls within the wide range of reasonable professional assistance and that the challenged action "might be considered sound trial strategy." State v. Starks, 20-429 (La. App. 5 Cir. 11/3/21), 330 So.3d 1192, 1198, citing Strickland, *supra*. There is nothing in the record to support how trial counsel was deficient for failing to pursue the motion to suppress or that he was prejudiced in any way. Thus, we find that defendant has not overcome the presumption, under the circumstances, that defense counsel's actions "might be considered sound trial strategy."

Defendant also asserts that defense counsel failed to object to the court's refusal to reschedule trial even though the defense was not properly prepared for trial, failed to visit him in jail,[6] failed to object to any testimony or evidence in this

_____

[6] At the hearing on the motion for new trial, defense counsel testified that he met with defendant several times, and that they discussed the case, trial strategy, and other potential witnesses.

matter, and failed to object to any peremptory challenges made by the State during jury selection. Defendant makes conclusory and non-specific assertions regarding these allegations and provides nothing that is sufficient to meet either prong under Strickland, supra. "General statements and conclusory allegations will not suffice to prove a claim of ineffective assistance of counsel." State v. Fisher, 19-488 (La. App. 5 Cir. 6/24/20), 299 So.3d 1238, 1247. Defendant's allegations are conclusory and speculative. In addition, defendant fails to make any arguments as to how these allegations affected the outcome or how the outcome would have been different. Further, many of these allegations relate to trial strategy and cannot support an ineffective assistance of counsel claim.

In light of the foregoing, we find defendant has not demonstrated that, but for counsel's alleged unprofessional conduct, the outcome of his trial would have been different. Thus, this assignment of error lacks merit.

**ERRORS PATENT**

The record was reviewed for errors patent, according to the mandates of La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir. 1990).

The record indicates the trial court did not expressly order that the sentence on count two should run concurrent with the sentence on count one. La. C.Cr.P. art. 883 provides:

> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.[7]

---

[7] The Official Revision Comment to the article provides that "[w]hen the court does not expressly direct whether the sentences are to be served concurrently or consecutively, this article provides the rule of construction.

In the instant case, defendant's criminal acts arise out of the same act or transaction—the armed robbery where defendant entered the victims' home and shot one of the victims during the course of a robbery on March 29, 2020. We therefore find that the armed robberies and the aggravated battery were part of the same transaction. Therefore, the "presumption" of concurrent sentences under La. C.Cr.P. art. 883 applies, and no corrective action is necessary.

**DECREE**

For the reasons stated, we affirm defendant's convictions and sentences.

<u>**AFFIRMED**</u>

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
CORNELIUS E. REGAN, PRO TEM

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **APRIL 12, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 22-KA-310

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DONALD A. ROWAN, JR. (DISTRICT JUDGE)
PRENTICE L. WHITE (APPELLANT)          ANNE M. WALLIS (APPELLEE)                    DARREN A. ALLEMAND (APPELLEE)
THOMAS J. BUTLER (APPELLEE)

### MAILED
JACOB V. ROBINSON #569661 (APPELLANT)     HONORABLE PAUL D. CONNICK, JR.
ELAYN HUNT CORRECTIONAL CENTER            (APPELLEE)
POST OFFICE BOX 174                       DISTRICT ATTORNEY
ST. GABRIEL, LA 70776                     JENNIFER C. VOSS (APPELLEE)
                                         ASSISTANT DISTRICT ATTORNEYS
                                         TWENTY-FOURTH JUDICIAL DISTRICT
                                         200 DERBIGNY STREET
                                         GRETNA, LA 70053